[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 6, 2004
THOMAS  K. KAHN
CLERK

_____

No. 01-12714
_____

D.C. Docket No. 99-07677-CV-DTKH

AMBROSIA COAL AND CONSTRUCTION COMPANY,
a Pennsylvania Corporation,

Plaintiff-
Counter-defendant-
Appellant,

versus

HECTOR CARLOS PAGES MORALES,
ANA CELIA PAGES,
GREEN ISLE PARTNERS LTD., S.E.,
GREEN ISLE-GP LTD., S.E., et al.

Defendants-
Cross-defendant-
Appellees,

ISLA VERDE BEACH HOTEL & CASINO, S.E.,
ISLA VERDE BEACH HOTEL & CASINO, INC.,

Defendants-Appellees,

SMALL CORPORATE SERVICES,
LENINE STROLLO,

Defendants-Counter-
Claimants-Cross-
Claimants.

_____

**(May 6, 2004)**

Before TJOFLAT and MARCUS, Circuit Judges, and MUSGRAVE[*], District Judge.

TJOFLAT, Circuit Judge:

I.

This litigation stems from the disposition of a leasehold interest in a parcel of real estate (the "Leasehold") located in Isla Verde, Puerto Rico. On September 15, 1994, the plaintiff in this case, Ambrosia Coal and Construction Company ("Ambrosia"), entered into a Settlement Agreement (the "Agreement") with all of the defendants except Green Isle Partners Ltd., S.E. ("Green Isle, Ltd.") and related entities (collectively the "Green Isle defendants").[1] The Agreement called for defendant Hector Carlos Pagés Morales ("Pagés") to give Ambrosia $750,000 in cash and a nonnegotiable promissory note in the principal sum of $3.25 million

_____

[*]Honorable R. Kenton Musgrave, Judge, United States Court of International Trade, sitting by designation.

[1] The Green Isle defendants include, in addition to Green Isle, Ltd., Green Isle-GP Ltd., S.E., Green Isle JV, S.E., ACES Green Isle GP, Inc., ACES P.R., Inc., Rahn Green Isle GP, Inc., Rahn Green Isle LP, Inc., Green Isle Investors GP, ACES Green Isle Investors, Inc. In this opinion, we sometimes refer to Green Isle, Ltd. separately.

to be paid in full in or before September 2001. The Agreement also obligated Pagés to convey the Leasehold to Green Isle, Ltd., in return for which he would receive a 33% limited partnership interest in Green Isle, Ltd. and a 33% interest in its general partner. Finally, the Agreement required Pagés to place in a trust (created by him) half of his partnership interest in Green Isle, Ltd., with the proviso that the income that partnership interest generated would (1) be used to pay off the $3.25 million note and (2) provide the sole funds for paying off the note.

As required by the Agreement, Pagés delivered $750,000 and the $3.25 million note to Ambrosia, conveyed the Leasehold to Green Isle, Ltd., received 33% interests in that limited partnership and its general partner, and placed half of his interest in Green Isle, Ltd. in a trust he created for the benefit of Ambrosia (the "Trust"). According to Ambrosia's second amended complaint (the "complaint"), in December 1995, Pagés unilaterally reduced the chances that Ambrosia would obtain payment in full of the $3.25 million note by agreeing to amendments to the Green Isle, Ltd. partnership agreement. First, those amendments disposed of approximately half of the partnership interest in Green Isle, Ltd. that Pagés had placed in the Trust, thus reducing the amount of income that would be available to pay off the note. Second, the amendments reclassified the portion of Pagés's

3

partnership interest remaining in the Trust—from "full limited partnership status" to "'Class B' limited partnership status"—so that the amount of income that partnership interest generated would be "de minimus." Ambrosia discovered these amendments to Green Isle, Ltd.'s partnership agreement in January 1998.

## II.

### A.

In December 1999, Ambrosia filed this lawsuit in the United States District Court for the Southern District of Florida (the "Federal Case"). Its complaint contains nineteen counts. The centerpiece of most of these counts is Pagés's conduct in agreeing to the amendments to Green Isle, Ltd.'s partnership agreement, which disposed of approximately half of the Green Isle, Ltd. interest he had placed in Trust and reclassified what interest remained. The counts are as follows:

Count I. Ambrosia seeks the rescission of the Agreement based on the reduction of the Trust's interest in Green Isle, Ltd.

Count II. Ambrosia seeks rescission of the Agreement on the ground that Ambrosia was fraudulently induced to enter into the Agreement.

Count III. Ambrosia seeks rescission of the Agreement based on the Puerto

4

Rican doctrine of "dolo in contrahendo."[2]

Count IV.  Ambrosia seeks rescission of the December 1995 amendment of the Green Isle, Ltd. partnership agreement.

Count V.  Ambrosia seeks damages against the Green Isle defendants under a Puerto Rican fraud statute, 31 P.R. Laws Ann. § 3499.[3]

Count VI.  Ambrosia seeks rescission of the Agreement on the ground that two parties to the Agreement, namely Garita Hotel Corporation ("Garita Corp.") and Garita Hotel Limited Partnership ("Garita Ltd."), received no consideration for entering into the Agreement.[4]

Count VII.  Ambrosia seeks damages for breach of the Agreement against Pagés and other defendants designated in Ambrosia's complaint as the "Isla Verde

---

[2] According to a Puerto Rico district court, "Wrongful representations or omissions which affect the consent of a contracting party are . . . known as 'dolo in contrahendo'." Ocaso, S.A. Compañia De Seguros y Reaseguros, v. Puerto Rico Mar. Shipping Auth., 915 F. Supp. 1244, 1257 (D. P.R. 1996). "'Dolo in contrahendo' may render a contract null if the nature of the misrepresentations is such that it is concluded that it affected the freedom of consent of one of the contracting parties." Id.

[3] Pursuant to 31 P.R. Laws Ann. § 3499, "Any person who may have acquired in bad faith things alienated in fraud of creditors must indemnify the latter for the losses and damages caused to them by the alienation whenever, for any reason whatsoever, it should be impossible for him to return them."

[4] Ambrosia's complaint alleges that "[a]ll rights, if any, inuring to Garita Hotel Corporation and Garita Hotel Limited Partnership from the [allegations stated in Ambrosia's complaint] have been assigned to or are owned by [Ambrosia]."

5

defendants,"[5] each of which are parties to the Agreement.

Count VIII. Ambrosia seeks damages against Pagés and the other Isla Verde defendants for breach of the obligation of good faith.

Count IX. Ambrosia seeks damages against the Green Isle defendants and the Isla Verde defendants under the <u>dolo in contrahendo</u> doctrine.

Count X. Ambrosia seeks damages against Pagés and the other the Isla Verde defendants for failing to pay Garita Ltd. for the Leasehold, which they purchased in 1991.[6]

Count XI. Ambrosia seeks damages against the Green Isle defendants and the Isla Verde defendants on the theory that those defendants conspired with Pagés to defraud Ambrosia by reducing the value of the Green Isle, Ltd. interest Pagés had placed in Trust.

Count XII. Ambrosia seeks damages against the Green Isle defendants and the Isla Verde defendants under 31 P.R. Laws Ann. § 3375.[7]

---

[5] The Isla Verde defendants include, in addition to Pagés, Isla Verde Beach Hotel & Casino, S.E., Isla Verde Beach Hotel & Casino, Inc., and Ana Celia Pagés. Of course, in this opinion, we sometimes refer to Pagés separately.

[6] Count X is not based, in whole or in part, on Pagés December 1995 conduct in disposing of approximately half of the Green Isle, Ltd. interest he had placed in Trust and the reclassification of that interest.

[7] Section 3375 explains, "Contracts are perfected by mere consent, and from that time they are binding, not only with regard to the fulfilment of what has been expressly stipulated, but also with regard to all the consequences which, according to their character, are in accordance

Count XIII. Ambrosia seeks damages against the Green Isle defendants for tortiously interfering with Ambrosia's contractual relationship with Pagés under the Agreement.

Count XIV. Ambrosia seeks an accounting from the Green Isle defendants and the Isla Verde defendants for the purpose of determining how much income the Trust should have received for its interest in Green Isle, Ltd.

Count XV. Ambrosia seeks rescission of (or damages for) various "side agreements" entered into by Pagés and individual defendants George Malizia and Lenine Strollo.

Counts XVI-XIX. Ambrosia seeks damages against all defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c) for violations of 18 U.S.C. §§ 1962 (c), (a), (b), and (d), respectively.[8]

---

with good faith, use, and law."

[8] Section 1964(c) of title 18 provides, "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . ." Sections 1962 (a), (b), and (c), in turn, make criminally liable those who engage in, or aid and abet another to engage in, a pattern of racketeering activity or the collection of an unlawful debt if they also do the following: invest income derived from the pattern of racketeering activity or the collection of an unlawful debt in the operation of an enterprise engaged in interstate commerce (section 1962(a)); acquire or maintain, through the pattern of racketeering activity or the collection of an unlawful debt, any interest in or control over such an enterprise (§ 1962(b)); or conduct, or participate in the conduct of, the affairs of such an enterprise, as a person employed by or associated with the enterprise, through a pattern of racketeering activity or the collection of an unlawful debt (§ 1962(c)). Section 1962(d) makes it a crime to conspire to violate sections 1962(a), (b), or (c).

From 1991 to 1999, the Green Isle defendants, the Isla Verde defendants, and others allegedly formed an "enterprise" and conducted it through a pattern of racketeering activity by engaging in mail and wire fraud, see 18 U.S.C. §§ 1341, 1343.

B.

In October 1999, after Ambrosia sent them a copy of the complaint it intended to file (and did file in December 1999) in the United States District Court for the Southern District of Florida, Pagés and the other Isla Verde defendants filed a lawsuit against Ambrosia, Garita Corp., Garita Ltd., and others in the Court of First Instance of the Commonwealth of Puerto Rico, Pagés v. Ambrosia Coal and Constr. Co., Civil Case No. KAC 99-1548 (901) (Oct. 27, 1999) (the "Puerto Rico Case").[9] As translated, the complaint in the Puerto Case seeks the following seven declarations:

(i) that the Agreement is valid and is in effect;
(ii) that plaintiffs and defendants should conduct themselves pursuant to the terms of the Agreement;
(iii) that plaintiffs have not breached their obligations under the Agreement;
(iv) that . . . plaintiffs have complied with each and every one of their obligations under the Agreement;

_____

[9] The other defendants Pagés sued in the Puerto Rico Case include Small Corporate Services, Inc., and individuals Lenine Strollo, Pat Ferruccio, George Malizia, and Joseph Seguellion. These parties are also defendants in the Federal Case.

8

(v) that plaintiffs have not committed any tortious act either in the state of Florida or in any other jurisdiction;
(vi) that [except as stated in the Agreement], plaintiffs do not owe . . . any of the defendants any sum of money; and
(vii) that plaintiffs are not obligated to issue any the five (5) promissory notes as requested by [Ambrosia, Garita Corp., and Garita Ltd.].[10]

### C.

The Federal Case was filed in the Southern District of Florida before Ambrosia had any notice of the filing of the Puerto Rico Case. Ambrosia received such notice only in February 2000, when it was served with process.[11] Meanwhile, on January 19, 2000, Ambrosia served Pagés with process in the Federal Case. The remaining defendants were served with process soon thereafter. The defendants in the Federal Case moved the district court to dismiss Ambrosia's complaint on the grounds provided by Fed. R. Civ. P. 12(b)(1), (2), (3), and (6).[12]

On July 17, 2000, the district court entered an order directing the parties to

---

[10] The five promissory notes mentioned here refer to notes that were allegedly given to Garita Ltd. as partial consideration for the purchase of the Leasehold long before the parties executed the Agreement at the center of this controversy. The Agreement provides that these five notes would be replaced by the $3.25 million note, described above, that Pagés issued to Ambrosia. In its complaint in the Federal Case, Ambrosia seeks rescission of the Agreement and, therefore, requests that the five notes be reissued to restore Garita Ltd. to the status quo ante.

[11] The record does not indicate when Ambrosia was served with process. Its brief to us states that service occurred on February 7, 2000.

[12] Some defendants answered the complaint and asserted as an affirmative defense that the complaint failed to state a claim for relief, provided by Fed. R. Civ. P. 12(b)(6).

9

submit briefs on the question of whether the court should abstain from exercising its jurisdiction in the Federal Case pending the completion of the litigation in the Puerto Rico Case.[13] On March 29, 2001, the district court held a hearing on the defendant's motions to dismiss and on the question of whether the court should abstain. On April 11, 2001, the court entered the order that is the subject of this appeal.

After reciting the standard for determining whether the allegations of a complaint are sufficient to withstand a Rule 12(b)(6) motion to dismiss, the court declined, albeit implicitly, to determine whether any of the nineteen counts of Ambrosia's complaint stated a claim upon which relief can be granted.[14] The court concluded that Ambrosia's RICO claims gave it federal question jurisdiction. It then took up the issue of abstention.

The court acknowledged that "[a]bstention from the exercise of federal jurisdiction is the exception not the rule." Nevertheless, drawing on the Supreme Court's opinion in <u>Colorado River Water Conservation District v. United States</u>,

---

[13] None of the defendants initially moved the court to abstain; we, therefore, conclude that the district court acted on its own initiative in ordering the parties to brief this issue.

[14] The court also declined to pass on the merits of some of the defendants' motions to dismiss for lack of jurisdiction over their person. <u>See</u> Fed. R. Civ. P. 12(b)(2). Our reading of the court's order gives us the impression that the court felt that personal jurisdiction existed with respect to all defendants.

424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976), for guidance, the court

decided to abstain to allow the Puerto Rico Case to proceed to final judgment.

Ambrosia now appeals the district court's decision.  We have jurisdiction under 28

U.S.C. § 1291.[15]

III.

Colorado River addresses the circumstances in which federal courts should

abstain from exercising their jurisdiction because a parallel lawsuit is proceeding

in one or more state courts.  In Colorado River, the United States brought suit in

the United States District for the District of Colorado.[16]

> The suit, against some 1,000 water users, sought declaration of the
> Government's rights to waters in certain rivers and their tributaries
> located in [Colorado].  In the suit, the Government asserted reserved
> rights on its own behalf and on behalf of certain Indian tribes, as well
> as rights based on state law. . . .  Shortly after the federal suit was
> commenced, one of the defendants in that suit filed an application in
> the state court [for the area where the disputed water was located],
> seeking an order directing service of process on the United States in
> order to make it a party to proceedings in [that area] for the purpose

---

[15]  The Green Isle defendants, but no other defendants, question whether we have jurisdiction to entertain this appeal.  There can be no doubt that we have jurisdiction. Abstention orders staying litigation under the Colorado River doctrine are final and, therefore, appealable under 28 U.S.C. § 1291.  Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 9-10, 103 S. Ct. 927, 933-34, 74 L. Ed. 2d 765 (1983).  Even if they are not final, they are appealable under the Cohen collateral order doctrine.  Id. at 11, 103 S. Ct. at 934. (citing Cohen v. Beneficial Loan Corp., 337 U.S. 541, 69 S. Ct. 1221, 93 L. Ed. 1528 (1949)).

[16]  Pursuant to 28 U.S.C. § 1345, district courts have original jurisdiction over all civil actions commenced by United States unless other federal statute provides otherwise.

of adjudicating all of the Government's claims, both state and federal. Id. at 805-06, 96 S. Ct. at 1240. The United States was served pursuant to 43 U.S.C. § 666, a federal statute known as the McCarran Amendment.[17] Id. at 806, 96 S. Ct. at 1240. Several defendants and intervenors in the federal suit then moved the district court to dismiss the case on the ground that "the McCarran Amendment terminated jurisdiction of federal courts to adjudicate federal water rights." Id., 96 S. Ct. at 1241. Without reaching the jurisdictional question, the district court granted the motion, holding "that the doctrine of abstention required deference to the proceedings in [Colorado]." Id. The Supreme Court agreed.[18]

The Court found that abstention was not appropriate under the traditional abstention doctrines, which involve "considerations of proper constitutional adjudication and regard for federal-state relations . . . ."[19] Id. at 817, 96 S. Ct. at

---

[17] The McCarran Amendment permits litigants "to join the United States as a defendant in any suit . . . for the adjudication of rights to the use of water of a river system or other source . . . where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law . . . and the United States is a necessary party to such suit." 43 U.S.C. § 666(a).

[18] The Supreme Court also addressed the argument that the McCarran Amendment limits the jurisdiction of federal courts. Ultimately, the Court concluded that "the McCarran Amendment in no way diminished federal-district-court jurisdiction under § 1345." Colorado River, 242 U.S. at 809, 96 S. Ct. at 1242. As this part of the Court's holding has no bearing on our abstention analysis, we make no further mention of it here.

[19] In Colorado River, 424 U.S. at 814-16, 96 S. Ct. at 1244-46, the Court identified the following circumstances in which the traditional abstention doctrines apply: (a) where cases presenting a federal constitutional issue might be mooted or presented in a different posture by a

12

1246.  Nevertheless, the Supreme Court acknowledged that principles other than these traditional abstention doctrines might permit federal courts to abstain from exercising otherwise proper jurisdiction "in situations involving the contemporaneous exercise of concurrent jurisdictions . . . ."  Id.  "These principles[,]" the Court explained, "rest on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."  Id. (quotation marks and alterations omitted).

For example, when multiple federal district courts might contemporaneously litigate concurrent jurisdictions, although "no precise rule has evolved, the general principle is to avoid duplicative litigation."  Id.

This general principle does not apply, however, when the duplicative litigation arises between state and federal courts.  As the Supreme Court recognized, "[g]enerally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the

---

state court determination of pertinent state law; (b) where there have been presented difficult questions of state law bearing on policy problems of substantial public import and whose importance transcends the result in the case then at bar; and (c) where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining (1) state criminal proceedings, (2) state nuisance proceedings antecedent to a criminal prosecution, which are directed at obtaining the closure of places exhibiting obscene films, or (3) collection of state taxes.  There is no contention that any of these categories of the abstention doctrine apply to the case at bar.

13

same matter in the Federal court having jurisdiction . . . ." Id. (marks and citations omitted). Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." Id. A policy permitting federal courts to yield jurisdiction to state courts cavalierly would betray this obligation. Thus, federal courts can abstain to avoid duplicative litigation with state courts only in "exceptional" circumstances. Id. at 818, 96 S. Ct. at 1246.

Without fashioning a bright-line test for determining when the existence concurrent state and federal cases warrants federal court abstention, the Supreme Court discussed several circumstances that district courts may consider. It noted that "the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts." Id. It further remarked that a federal court may consider "the inconvenience of the federal forum, the desirability of avoiding piecemeal litigation, and the order in which jurisdiction was obtained by the concurrent forums." Id., 96 S. Ct. at 1247 (citations omitted). Finally, the Supreme Court cautioned that "[o]nly the clearest of justifications will warrant dismissal" of the federal action. Id. at 819, 96 S. Ct. at 1247.

With these considerations in mind, the Court affirmed the district court's

14

judgment dismissing the federal complaint in Colorado River.[20]  Id. at 821, 96 S.

Ct. 1248.  The single most important factor in the Court's decision to permit

abstention was that McCarran Amendment evinced a "clear federal policy" of

"avoid[ing the] piecemeal adjudication of water rights in a river system."  Id. at

819, 96 S. Ct. at 1247; see also Moses H. Cone Memorial Hosp. v. Mercury

Constr. Corp., 460 U.S. 1, 16, 103 S. Ct. 927, 937, 74 L. Ed. 2d 765 (1983)

(stating that this consideration was "[b]y far the most important factor" in deciding

Colorado River).  The Court likened this policy to that of "avoiding the generation

of additional litigation through permitting inconsistent dispositions of property."

Colorado River, 424 U.S. at 819, 96 S. Ct. at 1247.  The Court emphasized that

"[t]his concern is heightened with respect to water rights, the relationships among

which are highly interdependent."  Id.  It further reasserted its earlier recognition

"that actions seeking the allocation of water essentially involve the disposition of

property and are best conducted in unified proceedings."  Id.  In the Court's view,

the McCarran Amendment "bespeaks a policy that recognizes the availability of

comprehensive state systems for adjudication of water rights as the means for

achieving these goals."  Id.  Colorado state law, the Court explained, provided "a

---

[20]  The Supreme Court reversed the Tenth Circuit's judgment, which would have held that abstention was inappropriate.

single continuous proceeding for water rights adjudication which antedated the suit in District Court." Id.

Beyond its important conclusion about the McCarren Amendment's policy objectives—particularly, of avoiding additional litigation and utilizing comprehensive state systems for the adjudication of water rights—the Supreme Court's decision that abstention was proper was also influenced by:

> (a) the apparent absence of any proceedings in the District Court, other than the filing of the complaint, prior to the motion to dismiss, (b) the extensive involvement of state water rights occasioned by this suit naming 1,000 defendants, (c) the 300-mile distance between the District Court in Denver and the [state] court in [the region containing the disputed rivers and tributaries], and (d) the existing participation by the Government in [state cases involving rights to waters in other regions of Colorado].

Id. at 820, 96 S. Ct. 1248.

## IV.

This appeal presents two issues: first, whether distinctions between the Federal Case and the Puerto Rico Case foreclose any application of the Colorado River principle as a threshold matter; and second, assuming that Colorado River is applicable, whether the district court abused its discretion by abstaining.

## A.

Ambrosia argues that Colorado River abstention is permissible only when

the relevant federal and state cases share <u>identical</u> parties, issues, and requests for relief. Ambrosia contends that the absence of any of these elements precludes application of <u>Colorado River</u> doctrine as a threshold matter. Ambrosia is wrong. Such formalistic requirements would fly in the face of the Supreme Court's clear efforts to fashion a flexible and holistic test for applying for the <u>Colorado River</u> abstention principle. <u>See</u> <u>Moses H. Cone</u>, 460 U.S. at 21, 103 S. Ct. at 940 ("[T]he <u>Colorado River</u> factors [are] to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand."). Under Ambrosia's proposed rule, only litigants bereft of imagination would ever face the possibility of an unwanted abstention order, as virtually all cases could be framed to include additional issues or parties. <u>See</u> <u>Interstate Material Corp. v. City of Chicago</u>, 847 F.2d 1285, 1288 (7th Cir. 1988) ("The addition of the federal defendants in the federal suit by itself does not destroy the parallel nature of the case. If it did, parties could avoid the doctrine of <u>Colorado River</u> by the simple expedient of naming additional parties."). On the other hand, litigants clearly should not invoke <u>Colorado River</u> analysis to seek abstention based on wholly unrelated cases. Thus, we hold that <u>Colorado River</u> analysis is applicable as a threshold matter when federal and state proceedings involve substantially the same parties and substantially the same

issues.[21]

The Federal Case and the Puerto Rico Case involve substantially the same parties, although some of the defendants in the Federal Case—in particular, the Green Isle defendants—are not parties in the Puerto Rico Case. The two cases involve substantially the same issues as they relate to the validity of the Agreement and Pagés's performance of his obligations thereunder. Whether the remaining issues the cases present are substantially the same, however, is problematic. We say this because the complaints in the two cases are quintessential shotgun pleadings.[22] In the Federal Case, the district court has not

---

[21] Many of our sister circuits and one of our district courts have arrived at the same conclusion. See, e.g., United States v. City of Las Cruces, 289 F.3d 1170, 1182 (10th Cir. 2002) ("[S]tate and federal proceedings are sufficiently parallel if substantially the same parties litigate substantially the same issues." (marks and citation omitted)); AAR Int'l, Inc. v. Nimelias Enter. S.A., 250 F.3d 510, 518 (7th Cir. 2001) ("Suits are parallel if substantially the same parties are litigating substantially the same issues simultaneously in two fora." (marks and citation omitted)); Romine v. Compuserve Corp., 160 F.3d 337, 340 (6th Cir. 1998) ("Exact parallelism is not required: it is enough if the two proceedings are substantially similar."); Marcus v. Township of Abington, 38 F.3d 1367, 1378 (3rd Cir. 1994) ("Although federal and state actions need not be wholly identical in order for a district court to deem them 'parallel,' the two actions will not be deemed parallel unless they are substantially similar."); New Beckley Mining Corp. v. Int'l Union, United Mine Workers of America, 946 F.2d 1072, 1073 (4th Cir. 1991) ("Suits are parallel if substantially the same parties litigate substantially the same issues in different forums."); Bosdorf v. Beach, 79 F. Supp. 2d 1337, 1344 n.13 (S.D. Fla. 1999) ("[E]xact parallelism is not required. It is sufficient if the two proceedings are substantially similar." (marks and citation omitted)).

[22] After being amended twice, Ambrosia's complaint asserts nineteen counts. Many adopt the material allegations of the preceding counts or paragraphs such that some counts appear to state more than one cause of action. Several counts appear to overlap; at least one seems to involve a transaction that is entirely distinct from the Agreement and the conduct that followed it. "This court has addressed the topic of shotgun pleadings on numerous occasions in the past,

18

stripped Ambrosia's complaint to its bare bones. That it was faced with a shotgun pleading may account for the court's failure to rule on the defendants' Rule 12(b)(6) motions prior to addressing the question of whether to abstain.[23] Putting aside the pleading problem, it is apparent that the Federal Case contains some claims—in particular, the RICO counts—that are not present in the Puerto Rico Case. Nonetheless, we will assume for purposes of our <u>Colorado River</u> discussion that the cases are sufficiently similar to render the question of whether the district court should have abstained a genuine issue.

B.

1.

"The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." <u>Colorado River.</u> 424 U.S. at 813, 96 S. Ct. at 1244 (quoting <u>County of</u>

---

often at great length and always with great dismay." <u>Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.</u>, 305 F.3d 1293, 1296 n.9 (11th Cir. 2002). As we have explained, "Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." <u>Andersen v. District Bd. of Trustees of Central Florida Community College</u>, 77 F.3d 364, 367 (11th Cir. 1996).

[23] We point out in passing that some of the defendants' motions to dismiss are also shotgun pleadings. They too need to be pared down before the court disposes of them.

Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-89, 79 S. Ct. 1060, 1063, 3 L. Ed. 2d 1163 (1959)).  Although the Supreme Court has acknowledged several distinct abstention doctrines,[24] only the doctrine developed in Colorado River is germane to this case.  Considerations supporting the other abstention doctrines are "weightier" than the considerations supporting Colorado River abstention.  Id. at 818, 96 S. Ct. at 1246.  Therefore, Colorado River abstention is permissible in fewer circumstances than are the other abstention doctrines, which themselves carve out only slender exceptions to the robust duty to exercise jurisdiction.

In interpreting Colorado River and its progeny, this court has catalogued six factors that must be weighed in analyzing the permissibility of abstention, namely: (1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights.  Am. Bankers Ins. Co. of Fla. v. First State Ins. Co., 891 F.2d 882, 884 (11th Cir. 1990).  Additionally, in Moses H. Cone, 460 U.S. at 17 n.20, 103 S. Ct. at 937, the Supreme Court remarked that "the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a

---

[24] See supra note 19.

20

parallel state litigation under <u>Colorado River</u>." Without question, the Supreme Court has also emphasized the importance of considering whether the concurrent cases involve a federal statute that evinces a policy favoring abstention. <u>Colorado River</u>, 424 U.S. at 819, 96 S. Ct. at 1247 (noting that the "most important" factor counseling in favor of abstention in that case was the policy underlying the McCarran Amendment).

With regard to weighing these considerations, the Supreme Court explained that "[n]o one factor is necessarily determinative," <u>Colorado River</u>, 424 U.S. at 818, 96 S. Ct. at 1247, and that "[t]he weight to be given to any one factor may vary greatly from case to case," <u>Moses H. Cone</u>, 460 U.S. at 16, 103 S. Ct. at 937. Furthermore, the factors must be considered flexibly and pragmatically, not as a "mechanical checklist." <u>Id.</u> Finally, the abstention inquiry must be "heavily weighted in favor of the exercise of jurisdiction." <u>Id.</u>

We review a district court's order abstaining from the exercise of jurisdiction on <u>Colorado River</u> grounds for an abuse of discretion. <u>TranSouth Fin. Corp. v. Bell</u>, 149 F.3d 1292, 1294 (11th Cir. 1998). A district court abuses its discretion if it misapplies the law, <u>Delta Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l</u>, 238 F.3d 1300, 1308 (11th Cir. 2001), or makes findings of fact that are clearly erroneous, <u>United States v. Jordan</u>, 316 F.3d 1215, 1249 (11th Cir. 2003).

21

2.

After carefully weighing the Colorado River factors and extending, as we must, a heavy bias in favor of exercising jurisdiction, we conclude that the district court abused its discretion by abstaining in this case.

Although it acknowledged that neither it nor the Puerto Rico court assumed jurisdiction over property, the district court intimated that the first Colorado River factor favors abstention because the cases at issue involve the use and development of land in Puerto Rico. This conclusion rests upon a clear misapplication of Colorado River. The first factor looks not to the location of the res, but the jurisdiction of the court. Because the relevant cases are not proceedings in rem, neither court has jurisdiction over property, and the first Colorado River factor does not favor abstention. Although the Supreme Court noted that "actions seeking the allocation of water essentially involve the disposition of property," Colorado River, 424 U.S. at 819, 96 S. Ct. at 1247, it has made no similar comparison to actions, like the one at bar, primarily seeking damages and the equitable rescission of a contract.

The district court said that the second factor, which addresses the convenience of the federal forum, favors abstention simply because "the plaintiff is from Pennsylvania, and the majority of the defendants are residents of Puerto

22

Rico." This factor should focus primarily on the physical proximity of the federal forum to the evidence and witnesses, Am. Bankers, 891 F.2d at 885, but the district court made no findings concerning the location of evidence and nonparty witnesses. In fact, Ambrosia indicates that a substantial quantity of the relevant evidence is located in Florida, the federal forum. Ambrosia alleges, for instance, that most of the historical documents relating to the hotel and casino built on the Leasehold are kept in Florida by Green Isle, Ltd., the Leasehold's present owner. Even if we could ignore the whereabouts of the documentary evidence, we would find it difficult to understand how Ambrosia's location in Pennsylvania makes Florida less convenient than Puerto Rico. Finally, defendant Malizia resides in Florida and many of the Green Isle defendants, including Green Isle, Ltd., are organized and maintaining registered offices in Florida. Without additional findings, we see no good reason to assume that the role of these defendants is inferior to the combined roles of the defendants who reside in Puerto Rico. In sum, the district court's meager assertion about the residence of the parties sheds little light on the convenience of the fora as that factor should be applied.

The third factor concerns the avoidance of piecemeal litigation. This factor does not militate in favor of abstention here. The district court rested its contrary conclusion on the assertion that inconsistent results or piecemeal litigation would

23

likely result simply because both cases deal with the validity of the Agreement. On the district court's misguided reasoning, the third Colorado River factor would seemingly support abstention in every federal case that has a parallel state case. If this mistaken approach were in fact the rule, defendants could always escape federal courts simply by filing parallel state lawsuits. Thus, as it is properly understood, Colorado River's factor concerning the avoidance of piecemeal litigation does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is abnormally excessive or deleterious. In Colorado River, for example, the Federal Government sued "some 1,000 water users," seeking a declaration of the Government's rights to waters in certain rivers and their tributaries. 424 U.S. at 805, 96 S. Ct. at 1240. The single most important factor in the Supreme Court's decision to permit abstention was that the federal statute upon which the lawsuit revolved evinced a clear federal policy of avoiding the piecemeal adjudication of water rights in a river system. Id. at 819, 96 S. Ct. at 1247. In stark contrast to Colorado River, this case neither turns on a federal statute designed with the intent of avoiding piecemeal litigation nor involves claims against 1,000 parties. Furthermore, as we note above, this case boils down to a dispute over the validity of a contract that raises none of Colorado River's property-specific concerns. Although the dual proceedings in

24

this instance will likely result in some unremarkable repetition of efforts and possibly some piece-by-piece decision-making, there is no indication that piecemeal litigation poses any greater waste or danger here than it does in the vast majority federal cases with concurrent state counterparts. As we have emphasized, federal courts are almost invariably obligated to exercise otherwise valid jurisdiction over such cases. See supra Part III.

A proper application of the fourth factor, namely the order in which the parties obtained jurisdiction, belies the district court's conclusion that this factor supports abstention. The Supreme Court clarified that, despite somewhat misleading phrasing in Colorado River, this factor "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." Moses H. Cone, 460 U.S. at 21, 103 S. Ct. at 940. Although the Puerto Rico Case was filed first, the parties ostensibly concede that the federal case has progressed further. Some of the defendants contend that we should ignore this fact because (1) the parties agreed to stay proceedings in Puerto Rico pending the resolution of certain pretrial motions in this Federal Case, and (2) the parties agreed that discovery conducted in the Federal Case would be transferrable to the Puerto Rico Case when the stay terminated. While these defendants might succeed in explaining why the federal

25

case is further along, they certainly do not succeed in showing that the relative progress of the cases tends to justify abstention.

The fifth factor considers whether state or federal law applies. The district court found that this factor supports abstention and was, indeed, the most important consideration in its decision to abstain. The court reasoned that Puerto Rico law applies because the Agreement so specifies. In the first place, this conclusion is highly suspect because the validity of the Agreement is a core issue in both cases. Assuming the applicability of the Agreement's choice-of-law-provision preassumes the validity of the Agreement, thereby thrusting the cart before the horse.[25] Secondly, the district court failed to comprehend that the "question for [abstention] purposes is not which state law applies, but rather whether federal or state law applies." Am. Bankers, 891 F.2d at 886. Since Ambrosia has asserted RICO claims, we must assume at present that this case travels on both state and federal law. Significantly, the district court did not find that this action involves complex questions of state law that a state court might be best suited to resolve. See Noonan South, Inc. v. County of Volusia, 841 F.2d 380, 382 (11th Cir. 1988) (explaining that the application of Florida law alone in a

---

[25] We are in no position to determine which body of law applies to this controversy if the Agreement is invalid. Ambrosia does not allege where the Agreement was executed. The document contains signatures notarized, at least, in Puerto Rico, Ohio, and Pennsylvania.

26

federal diversity case did not favor <u>Colorado River</u> abstention where no "complex

questions of state law" were at issue). Thus, no aspect of this case appears to

render the presence of state law, alongside federal claims, an arrow in the

defendants' abstention quiver.

The district court suggested that the fifth factor favors abstention because

the Puerto Rico court would protect the rights of all the parties.[26] The district

court, however, made no finding that it is incapable of doing the same, and there is

no force to any of the parties' arguments suggesting as much. Consequently, the

sixth factor is neutral with regard to abstention. This factor will only weigh in

favor or against abstention when one of the fora is inadequate to protect a party's

rights. <u>Id.</u> at 383.

Not surprisingly, Ambrosia and the defendants accuse one another of filing

vexatious and reactive lawsuits. The district court did not consider these

allegations in its order, and we must, therefore, assume that they did not influence

its decision to abstain.

Finally, it bears emphasis that no federal law implicated in the Federal Case

---

[26] In that it was faced with a shotgun complaint in the Federal Case, and the complaint in the Puerto Rico Case was a model of ambiguity, we are at a loss as to how the district court could conclude, in its order of April 11, 2001 abstention order, "that Puerto Rico would protect the rights of all parties."

asserts a policy favoring resort to the Puerto Rico court.

In our view, the <u>Colorado River</u> factors, taken individually and together, do not weigh strongly in favor of abstention. The district court reached its decision to abstain by misapplying most or all of those factors and by failing to appreciate the gravity of its duty to exercise jurisdiction. Its decision therefore constituted an abuse of discretion.

V.

For the foregoing reasons, the order of the district court is reversed and the case is remanded for further proceedings.

SO ORDERED.