[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16079
Non-Argument Calendar
_____

D.C. Docket No. 0:16-cv-60960-WPD

JOHN M. BARONE,

Plaintiff-Appellant,

versus

WELLS FARGO BANK, N.A.,
a.k.a. Wells Fargo Home Mortgage,
a.k.a. Wells Fargo Home Lending,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 21, 2017)

Before TJOFLAT, WILLIAM PRYOR, and ROSENBAUM, Circuit Judges.

PER CURIAM:

John M. Barone, proceeding *pro se*, appeals the district court's dismissal of his complaint alleging various wrongful acts by Wells Fargo Bank, N.A. ("Wells Fargo"), after it acquired Barone's mortgage in 2008. The district court dismissed his complaint for lack of subject-matter jurisdiction under the *Rooker-Feldman*[1] doctrine, concluding that Barone was, in essence, seeking to challenge the underlying state foreclosure judgment that Well Fargo obtained in October 2013. In the alternative, the court abstained from exercising jurisdiction, under both the *Younger*[2] and *Colorado River*[3] abstention doctrines, in light of a parallel state case that Barone filed against Well Fargo six months before bringing suit in federal court. Barone maintains that not one of these doctrines applies and that the court erred in dismissing his suit.

After careful review, we agree with Barone that the district court had subject-matter jurisdiction over at least some of his claims and that no "exceptional" circumstances warranted abstention. But Wells Fargo is correct that Barone's complaint violated Rule 8, Fed. R. Civ. P., and was subject to dismissal without prejudice on that basis. We therefore remand this case with instructions to allow Barone to replead his claims with greater clarity and in compliance with the Federal Rules of Civil Procedure.

---

[1] *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

[2] *Younger v. Harris*, 401 U.S. 37 (1971).

[3] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

## I.

Barone initiated this lawsuit against Wells Fargo in May 2016 in the United States District Court for the Southern District of Florida by filing a 171-page complaint and 165 pages of exhibits. Barone's 811-paragraph complaint contains approximately thirteen 13 counts[4] and covers events both before and after Wells Fargo obtained a state-court foreclosure judgment in 2013.

Barone's allegations reflect that Wells Fargo took over Barone and his wife's (the "Barones") mortgage in 2008, when Wells Fargo acquired Wachovia. At some point between then and 2011, when Wells Fargo filed the foreclosure suit, the Barones began having trouble making mortgage payments because of a downturn in business and his wife's serious medical issues. To try to lower their monthly payment, the Barones applied for a loan modification under the Home Affordable Modification Program ("HAMP"), for which Barone asserts they were eligible. At Wells Fargo's instruction, they stopped making mortgage payments in order to be considered for the loan modification.

Those efforts at modification appear to have been unsuccessful, however. The state foreclosure proceeding ended in a Consent Final Judgment of

---

[4] (1) Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") Act, 18 U.S.C. § 1962(c); (2) RICO Act conspiracy, 18 U.S.C. § 1962(d); (3) breach of fiduciary duty; (4) breach of good faith and fair dealing; (5) breach of contract; (6) "defamation/slander per se;" (7) unjust enrichment; (8) conversion; (9) constructive fraud; (10) fraudulent inducement; (11) tortious interference with a business relationship; (12) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*; and (13) "Theft, Robbery and Related Crimes" pursuant to Fla. Stat. § 812.012(d)(1).

Foreclosure in October 2013.  The Barones were represented by counsel in the foreclosure proceeding.

After the 2013 foreclosure judgment, the Barones continued to seek a loan modification and other forms of foreclosure relief from Wells Fargo.  Barone alleged that, despite the Barones' eligibility, Wells Fargo again denied modification under HAMP and instead offered less favorable modification terms.

In addition to the loan-modification issues, Barone alleged that Wells Fargo wrongfully obtained lender-placed (or "force-placed") hazard insurance on the Barones' home.  The complaint states that Wells Fargo charged the Barones for lender-placed hazard insurance at a substantially higher cost than if they had obtained insurance on their own, and that Wells Fargo received undisclosed kickbacks from the lender-placed insurers for using their exorbitantly-priced policies.  Barone alleged that Wells Fargo continued to charge for lender-placed insurance after the foreclosure judgment in October 2013.

Citing his own experiences, other court cases, and newspaper articles, Barone alleged that Wells Fargo and its affiliates were operating a RICO enterprise for the purpose of defrauding the Barones, Wells Fargo's other customers, and U.S. taxpayers.  The fraudulent scheme, according to Barone, included pushing customers to stop making monthly mortgage payments to be eligible for loan modifications which Wells Fargo had no intention of granting, as well as

4

manipulating the lender-placed insurance market to maximize its profits by earning illegal kickbacks from the lender-placed insurers.

Well Fargo moved to dismiss the complaint on three main grounds: (1) for lack of subject-matter jurisdiction under the *Rooker-Feldman* doctrine; (2) for failure to comply with Rule 8, Fed. R. Civ. P.; and (3) because abstention was warranted in light of a nearly identical state-court case against Wells Fargo that Barone filed in December 2015, around six months before the federal lawsuit.

The district court dismissed the complaint for lack of jurisdiction, pursuant to the *Rooker-Feldman* doctrine. Finding that a "majority" of the claims raised in Barone's current complaint were inextricably intertwined with the state-court foreclosure proceeding, the district court concluded that Barone was, in essence, attempting to challenge his state foreclosure judgment in federal court, which the *Rooker-Feldman* doctrine forbids. In the alternative, the district court determined that it should abstain from hearing the matter under either the *Younger* or *Colorado River* abstention doctrines in light of the parallel state case. Barone now appeals.

**II.**

We review *de novo* the application of the *Rooker-Feldman* doctrine. *Lozman v. City of Riviera Beach, Fla*., 713 F.3d 1066, 1069–70 (11th Cir. 2013). We review a district court's decision to abstain for an abuse of discretion. *Boyes v. Shell Oil Prod. Co.*, 199 F.3d 1260, 1265 (11th Cir. 2000). A district court will

5

abuse its discretion if it fails to apply the proper legal standard, fails to follow proper procedures, or makes a clear error of judgment. *Id.*

## III.

"Generally speaking, the *Rooker–Feldman* doctrine bars federal district courts from reviewing state court decisions." *Nicholson v. Shafe*, 558 F.3d 1266, 1270 (11th Cir. 2009). In the federal system, only the Supreme Court of the United States has appellate jurisdiction over judgments of state courts in civil cases. *See* 28 U.S.C. § 1257; *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005).

More precisely, the *Rooker-Feldman* doctrine applies to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[5] *Exxon Mobil*, 544 U.S. at 284. While recognizing the "narrowness of the rule" after *Exxon Mobil*, we have said that it continues to apply both to claims that were actually raised in the state court and to those "inextricably intertwined" with the state court's judgment. *Casale v. Tillman*, 558 F.3d 1258, 1260–61 (11th Cir. 2009). "A claim is inextricably

---

[5] Before *Exxon Mobil*, this Court applied a four-factor test, derived from *Amos v. Glynn County Board of Tax Assessors*, 347 F.3d 1249, 1266 (11th Cir. 2003), to guide the application of the *Rooker-Feldman* doctrine. *See Nicholson*, 558 F.3d at 1272. As we noted in *Nicholson*, however, "*Exxon Mobil* casts doubt on the continued viability of the *Amos* test." *Id.* at 1274. Accordingly, "[r]ather than apply Amos, we adhere to the language in *Exxon Mobil*," which is quoted above. *Id.*

intertwined if it would effectively nullify the state court judgment, or it succeeds only to the extent that the state court wrongly decided the issues." *Id.* (citation and internal quotation marks omitted). The doctrine does not apply, however, "where a party did not have a reasonable opportunity to raise his federal claim in state proceedings." *Id.* (internal quotation marks omitted).

This case does not completely fit the *Rooker-Feldman* mold. In finding "that the *majority* of the claims raised by Plaintiff in the instant action are inextricably intertwined" with the state foreclosure proceeding, the district court appears to have recognized that not *all* of his claims are inextricably intertwined. Indeed, Barone's complaint alleged various acts of wrongdoing by Wells Fargo after the October 2013 foreclosure judgment, and at least some of the claims based on these acts do not appear to invite review of the correctness of the state foreclosure judgment. For instance, Wells Fargo suggests that "the RICO and lender-placed insurance claims" were not subject to dismissal on *Rooker-Feldman* grounds and that the district court instead "abstained from hearing those claims as the same claims were pending in the State Action." Appellee's Br. at 12 n.7.

Consequently, we conclude that the *Rooker-Feldman* doctrine does not require the dismissal of Barone's entire action, even if it applies to some or most of his claims. However, in light of the deficiencies in Barone's complaint, which we address below, we can understand how the district court may have concluded that

dismissal under the *Rooker-Feldman* doctrine was appropriate. Indeed, we are unable to delineate with more precision the claims to which the *Rooker-Feldman* doctrine does not apply. But since it appears that some such claims do exist, we leave these matters to be addressed, as appropriate, on remand, after Barone has had an opportunity to amend his complaint, as described in Section IV below.

## III.

As an alternative to dismissal under the *Rooker-Feldman* doctrine, the district court abstained from exercising its jurisdiction over Barone's federal case in light of a nearly identical, pending state-court case. The general rule is that the pendency of a parallel state proceeding is no bar to proceedings concerning the same matter in a federal court having jurisdiction. *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013). Federal courts have a virtually unflagging obligation to exercise their jurisdiction, and "[a]bstention is not in order simply because a pending state-court proceeding involves the same subject matter." *Id.*

The Supreme Court, however, has recognized certain "exceptional" circumstances in which it is appropriate for federal courts to abstain from exercising jurisdiction. *See id.* Such exceptional circumstances include those exemplified by the *Younger* abstention doctrine and the *Colorado River* abstention doctrine, both of which the district court relied on below. We address each in turn.

## A.

The *Younger* abstention doctrine is applicable where "the prospect of undue interference with state proceedings counsels against federal relief." *Sprint Commc'ns*, 134 S. Ct. at 588. The doctrine prohibits federal courts from interfering with or enjoining three "exceptional" types of state proceedings: (1) criminal prosecutions; (2) civil proceedings that are akin to a criminal prosecution; and (3) "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 591. These three "exceptional" categories "define *Younger*'s scope." *Id.*

If the court finds that one of these exceptional circumstances is present, there are "additional factors" to be considered. *Sprint Commc'ns*, 134 S. Ct. at 593 (citing *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982)). These include circumstances in which there is (1) an ongoing state judicial proceeding that (2) implicates important state interests and (3) provides an adequate opportunity to raise federal challenges. *Id*.

But abstention is not warranted whenever these so-called *Middlesex* factors are met. *See id.* As the Supreme Court explained in *Sprint Communications*, the three *Middlesex* factors, divorced from one of the three types of exceptional proceedings which define *Younger*'s scope, "would extend *Younger* to virtually all parallel state and federal proceedings, at least where a party could identify a plausibly important state interest." *Id.* And that result, the Court has said, is

9

irreconcilable with the general rule "that, even in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the exception, not the rule." *Id.* (internal quotation marks omitted).

Here, the district court found, and Wells Fargo argues on appeal, that *Younger* abstention was appropriate because all three *Middlesex* factors were met. But that finding is insufficient on its own in light of *Sprint Communications*. *See* 134 S. Ct. at 593. For *Younger* to apply, the case must involve one of the three "exceptional" categories of proceedings that, according to Supreme Court, define *Younger*'s scope. *Id.* at 591. Because the parallel state proceeding is not a criminal proceeding or akin to one, *Younger* could apply only if the state proceeding involved an order uniquely in furtherance of the state court's ability to perform its judicial functions. *Id.*; *cf. Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13 (1987) (requirement for posting bond pending appeal); *Juidice v. Vail*, 430 U.S. 327, 335–36 & n.12 (1977) (state civil contempt order).

Nothing about the parallel state proceeding appears to "touch on a state court's ability to perform its judicial function" in any unique way. *See Sprint Commc'ns*, 134 S. Ct. at 592. The state judicial interests involved in Barone's state-court case are broadly the same as those that would be involved in any case in state court. While the state has an important interest in matters concerning real property within its borders, the Supreme Court has made clear that *Younger* does

10

not extend to all parallel state and federal proceeding involving an important state interest. *See id.* at 593. Thus, the parallel state case is not "of the sort entitled to *Younger* treatment." *Id.* at 592 (ellipsis and internal quotation marks omitted).

In sum, the district court's findings, which were limited to the *Middlesex* factors, do not support the application of the *Younger* doctrine as that doctrine has been interpreted and limited by *Sprint Communications*. Moreover, the parallel state proceeding does not fall within one of the categories of proceedings which define *Younger*'s scope. Accordingly, we must conclude that the district court abused its discretion in dismissing Barone's federal lawsuit under the *Younger* doctrine.

## B.

The *Colorado River* abstention doctrine may apply as an alternative ground for abstention even where *Younger* abstention does not. *Colorado River*, 424 U.S. at 817. The *Colorado River* abstention doctrine "rest[s] on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* (alteration adopted) (internal quotation marks omitted). We emphasize, however, that the doctrine presents an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Id.* at 813. "[W]hile abstention as a general matter is rare, *Colorado River* abstention is particularly rare." *Jackson-Platts v. Gen.*

11

*Elec. Capital Corp.*, 727 F.3d 1127, 1140 (11th Cir. 2013).  "Only the clearest of justifications merits abstention."  *Id.* (internal quotation marks omitted).

Under *Colorado River*, federal courts may "abstain from a case if (1) a parallel lawsuit was proceeding in state court, and (2) judicial-administration reasons so demanded abstention."  *Id.*  A "parallel" suit is "one involving substantially the same parties and substantially the same issues."  (internal quotation marks omitted).  Where there are parallel federal and state proceedings, federal district courts must weigh a number of factors in analyzing whether abstention is appropriate:

> (1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights.

*Ambrosia Coal & Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1331 (11th Cir. 2004).[6]  This is a flexible inquiry in which no single factor is dispositive, but courts are required to weigh the factors with a heavy bias in favor of the exercise of federal jurisdiction.  *Id.* at 1332.

---

[6] Two additional factors may be relevant to the abstention decision.  *See Ambrosia Coal*, 368 F.3d at 1331.  They include whether either the federal or the state litigation is "vexatious or reactive" and whether the concurrent cases involve a federal statute that evinces a policy favoring abstention.  *Id.*  The latter factor is not relevant to this case, and the former factor was not addressed by either the district court or Wells Fargo, so we assume it played no role in the court's decision to abstain.  *See id.* at 1334 ("The district court did not consider these allegations [of vexatious and reactive conduct] in its order, and we must, therefore, assume that they did not influence its decision to abstain.").

12

The first factor favors abstention "only where there is a proceeding in rem." *Jackson-Platts*, 727 F.3d at 1141. While the state action relates to real property and a prior *in rem* proceeding, it was not itself an *in rem* proceeding and the state court did not take jurisdiction over the property as a result of Barone's filing of the state action. That fact distinguishes this case from the ones cited by Wells Fargo in its brief on appeal. *See* Appellee's Br. at 18. So the first factor does not favor abstention.

The second factor concerns the inconvenience of the federal forum, primarily its physical proximity to the evidence and witnesses. *Id.* Because the fora are equally convenient, as Wells Fargo admits, Appellee's Br. at 19 ("[B]oth the state forum and the federal forum lie in the same geographical region."), the second factor cuts against abstention. *See Jackson-Platts*, 727 F.3d at 1142.

The third factor concerns the avoidance of piecemeal litigation. *Ambrosia Coal & Constr. Co.*, 368 F.3d at 1333. This factor, however, does not favor abstention whenever there is a parallel state case "involving substantially the same parties and substantially the same issues." *See Jackson-Platts*, 727 F.3d at 1140, 1142. Rather, the "circumstances enveloping those cases" must be likely to "lead to piecemeal litigation that is abnormally excessive or deleterious." *Ambrosia Coal*, 368 F.3d at 1333. The dual proceedings at issue will no doubt result in duplicative efforts and the possibility of inconsistent results. At the same time,

13

however, the risk of piecemeal litigation is not significantly greater than in most other federal suits with a state counterpart. *See id.* (rejecting the notion that abstention is appropriate "in every federal case that has a parallel state case"). Thus, this factor favors abstention, but not strongly so.

The fourth factor—"the order in which the fora obtained jurisdiction"—does not turn strictly on the chronological order in which the proceedings were initiated. *Id.* Rather, what matters for this factor is the relative progress of the proceedings. *Jackson-Platts*, 727 F.3d at 1142. At the time the district court entered its order, it does not appear that the state suit had progressed past the pleading stage, even though it was filed six months earlier.[7] Wells Fargo's assertion that we should include the prior foreclosure suit when measuring relative progress is unpersuasive. The question is whether the state suit that was filed in December 2015 was further along than the federal suit. *See id.* While this factor arguably favors abstention, it does so only slightly.

As for the fifth factor, the inquiry concerns "whether federal law or state law provides the rule of decision." *Id.* at 1143. Even if Wells Fargo is correct that Barone's "state-law claims predominate over this action," Appellee's Br. at 22, the mere fact that state law applies is not enough to warrant abstention. Instead, "this

---

[7] A recent search of case records on the Broward County Clerk of Courts website, http://www.browardclerk.org/Web2, reveals that the state court entered a final order of dismissal in the parallel state suit on August 9, 2017, based on Barone's failure to timely file a second amended complaint. *See Barone v. Wells Fargo Bank, N.A.*, CACE15021684 (Fla. Cir. Ct. Broward Cty. Aug. 9, 2017).

14

factor favors abstention only where the applicable state law is particularly complex or best left for state courts to resolve." *Jackson-Platts*, 727 F.3d at 1143. Federal courts routinely address state-law claims such as Barone's, which include breach of contract, breach of fiduciary duty, defamation, and fraud. And Barone alleged both state and federal claims, so his case "travels on both state and federal law." *Ambrosia Coal*, 368 F.3d at 1334. Therefore, the presence of state-law claims, alongside federal claims, does not favor abstention. *See id.*

"The sixth and final factor concerns whether the state court can adequately protect the parties' rights." *Jackson-Platts*, 727 F.3d at 1143. We agree with Wells Fargo that "there is no reason to believe that the State Court cannot adequately protect the interests of Barone," Appellee's Br. at 22, "but the fact that *both* forums are adequate to protect the parties' rights merely renders this factor neutral," *Jackson-Platts*, 727 F.3d at 1143 (emphasis in original) (alteration adopted) (internal quotation marks omitted). *See Ambrosia Coal*, 368 F.3d at 1334 ("This factor will only weigh in favor or against abstention when one of the fora is inadequate to protect a party's rights."). Because this factor is neutral, it does not weigh in favor of abstention.

Overall, the *Colorado River* factors, taken individually and together, do not weigh strongly in favor of abstention, particularly when we account for the presumption in favor of exercising federal jurisdiction. We therefore must

15

conclude that the court abused its discretion because no one factor or combination of factors presents the "clearest of justifications" warranting abstention.[8]  *See Jackson-Platts*, 727 F.3d at 1140.

## IV.

As an alternative ground for affirmance, Well Fargo argues that the judgment should be upheld because the complaint was subject to dismissal for violating Rule 8, Fed. R. Civ. P.  *See Fla. Wildlife Fed'n Inc. v. U.S. Army Corp. of Eng'rs*, 859 F.3d 1306, 1316 (11th Cir. 2017) (we may affirm the judgment on any ground the record supports, even if that ground was not relied upon or addressed by the district court).  Well Fargo asserts that the 171-page complaint is an impermissible "shotgun" pleading.  We agree.

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Although there is no "technical form," the plaintiff's allegations "must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  The purpose of Rule 8(a)(2)'s requirement is "to give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis, citation, and internal quotation marks omitted).

---

[8] Even assuming that the district court properly abstained under *Colorado River*, staying, rather than dismissing, Barone's federal action would have been the correct course. *See Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 998 (11th Cir. 2004) ("[A] stay, not a dismissal, is the proper procedural mechanism for a district court to employ when deferring to a parallel state-court proceeding under the Colorado River doctrine.").

What we have deemed "shotgun" pleadings fail, to varying degrees and in various ways, "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). Barone's complaint falls within two of the four rough types of shotgun pleadings we identified in *Weiland*.

First, Barone's complaint contains "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321. In each of his thirteen counts, Barone "restates and re-alleges the preceding paragraphs of this Complaint as if set forth fully herein, word for word." Second, Barone's rambling, disjointed, and often redundant complaint "is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. The combination of these two deficiencies makes it virtually impossible to know which allegations of fact are intended to support which claims for relief. *See id.* at 1325.

Thus, Barone filed a shotgun pleading that was properly subject to dismissal without prejudice. That is not the end of the matter, however. "[D]efendant[s] faced with a shotgun pleading should move the court, pursuant to Rule 12(e), to require the plaintiff to file a more definite statement." *See Weiland*, 792 F.3d at 1321 n.10 (internal quotation marks omitted). If the defendant does not do so, "the

17

district court ought to take the initiative to dismiss or strike the shotgun pleading and give the plaintiff an opportunity to replead."  *Id.*; *see Byrne v. Nezhat*, 261 F.3d 1075, 1128-33 (11th Cir. 2001) ("[I]f, in the face of a shotgun complaint, the defendant does not move the district court to require a more definite statement, the court, in the exercise of its inherent power, must intervene *sua sponte* and order a repleader.").  Where a plaintiff fails to make meaningful changes to his complaint after an opportunity to replead, the court may dismiss the complaint under either Rule 41(b), Fed. R. Civ. P, or the court's inherent power to manage its docket. *Weiland*, 792 F.3d at 1321 n.10.

Therefore, the district court on remand should give Barone an opportunity to replead his complaint in compliance with the Federal Rules of Civil Procedure.

## V.

In sum, we cannot conclude that the *Rooker-Feldman* doctrine barred Barone's entire lawsuit, and abstention under both the *Younger* and *Colorado River* doctrines is not warranted.  However, Barone's complaint is a shotgun pleading that fails to provide fair notice of its claims.  We therefore vacate the judgment dismissing Barone's suit and remand with instructions to allow Barone the opportunity to replead his claims.[9]

---

[9] Barone raises a few other arguments, relating to Wells Fargo's purported service errors and the district court clerk's failure to docket a timely response, but these appear to be either harmless or moot in light of our decision.  As for Barone's contention that the district judge

**VACATED AND REMANDED.**

---

should have recused himself, he did not raise this argument below, and the judge may address this issue on remand.