[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-11012

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 12, 2010
JOHN LEY
CLERK

D.C. Docket No. 00-01334 MD-FAM

IN RE:
MANAGED CARE LITIGATION

_____

DOCTORS HEALTH, INC.,

Interested Party-Appellant,

versus

AETNA,
AETNA U.S. HEALTHCARE, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 12, 2010)

Before TJOFLAT and COX, Circuit Judges, and KORMAN,* District Judge.

_____

*Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

PER CURIAM:

We consider in this appeal whether the district court properly enjoined Doctors Health, Inc. ("Doctors Health") from pursuing a breach of contract claim against NYLCare Health Plans of the Mid-Atlantic, Inc. ("NYLCare") that resulted in a judgment for Doctors Health in bankruptcy court. The district court determined that the claim had been released in a settlement agreement in *Shane v. Humana, Inc., et al.*, a federal class action lawsuit brought by medical providers against managed-care companies. We hold that the claim at issue was not released and vacate the district court's order enjoining Doctors Health from pursuing that claim.

## I. BACKGROUND AND PROCEDURAL HISTORY

Beginning in late 1997, Doctors Health managed NYLCare's Medicare HMO plan in Maryland, Virginia, and the District of Columbia, pursuant to a three-year contract between those parties. In July 1998, NYLCare became a subsidiary of Aetna U.S. Healthcare, Inc. ("Aetna"). Shortly thereafter, NYLCare determined that it would discontinue the Medicare HMO plan in Doctors Health's geographic region and informed the government that it would not renew its Medicare contracts for that region as of December 31, 1998. NYLCare then notified Doctors Health that, as of January 1, 1999, there would be no Medicare HMO plan for Doctors Health to manage.

In November 1998, Doctors Health filed, in Maryland, a Petition for Relief under Chapter 11 of the United States Bankruptcy Code. NYLCare submitted a proof of claim in the bankruptcy case. Doctors Health did not pay the claim. Instead, the trustee filed an adversary action against NYLCare, alleging that NYLCare had breached its Medicare HMO management contract with Doctors Health and had caused Doctors Health damages in excess of NYLCare's claim in the bankruptcy case. (R.1-5879, Ex. A.) The adversary action was tried at the end of 2001, and the bankruptcy court took the case under advisement.

In 2000 (while the bankruptcy case was pending but before the adversary action was tried), numerous putative class action lawsuits were initiated in federal district courts against health insurance companies in the managed-care industry. Those lawsuits were transferred by the Judicial Panel on Multidistrict Litigation to the Southern District of Florida and consolidated for pretrial proceedings. The consolidated cases moved forward as *In re Managed Care Litigation*, MDL 1334, on two tracks: the Subscriber Track (cases brought on behalf of subscribers or members of health plans) and the Provider Track (cases brought on behalf of physicians and other providers of healthcare services).

In September 2002, the claims asserted in the Provider Track cases were brought in a second amended consolidated class action complaint styled *Shane v.*

*Humana, Inc., et al.* Doctors Health was not a named party. The *Shane* plaintiffs were certified as a nationwide class.

In May 2003, Aetna, Inc. (and all its subsidiaries, including NYLCare) entered into a settlement with the *Shane* plaintiff class. The terms of that settlement were memorialized in a settlement agreement dated May 21, 2003 ("the Agreement"). (R.1-2000, Ex. B.) The Agreement defined the class as "any and all Physicians, Physicians Groups and Physician Organizations who provided Covered Services to any Plan Member or any individual enrolled in or covered by a plan offered or administered by any Person named as a defendant in the Complaint or by any of their respective current or former subsidiaries or affiliates, in each case from August 4, 1990 through [May 30, 2003]." (*Id.* at 4, ¶ 1.15; R.1-2011.) Physician Organization was defined as "any association, partnership, corporation or other form of organization (including without limitation independent practice associations and physician hospital organizations) that arranges for care to be provided by Physicians organized under multiple taxpayer ID numbers, to Plan Members." (R.1-2000, Ex. B at 10, ¶ 1.70.)

Under the Agreement, potential members of the class were to be given notice of the proposed settlement and an opportunity to opt out of the class and the Agreement. (R.1-2011 at 7.) Notice was to be given through the mail to the potential

4

class members' last known addresses and through publication. (*Id.* at 5-6.) Those class members who did not opt out released Aetna and all its subsidiaries from all claims "arising on or before the Preliminary Approval Date, that are, were or could have been asserted against any of the Released Parties based on or arising from the factual allegations of the Complaint . . . ." (R. 1-2000, Ex. B at 72, ¶ 13(a).) The district court granted final approval of the settlement, on the terms stated in the Agreement, on October 24, 2003. (R.1-2533.) On November 6, 2003, the district court clarified its October 24, 2003 order and enjoined class members who did not opt out from the settlement from pursuing any released claims against Aetna and its subsidiaries. (R.1-2570 at 2-4.) The court retained jurisdiction over all matters relating to the interpretation, administration, and consummation of the Agreement and enforcement of the injunctions. (*Id.* at 9.)

In April 2005, the bankruptcy court issued its ruling in the adversary action. The court disallowed NYLCare's proof of claim in its entirety and awarded Doctors Health contract damages of $21.3 million. (R.1-5879, Ex. C at 10.) Now a subsidiary of Aetna, NYLCare took two courses of action: (1) as NYLCare, it appealed to the District of Maryland; and (2) as Aetna, it filed a Motion to Show Cause in the Southern District of Florida seeking an order enforcing the release in the Agreement as a bar to the bankruptcy court's judgment. Doctors Health responded with an

5

emergency motion in the bankruptcy court, seeking an injunction requiring Aetna to withdraw its motion in the Southern District of Florida. The bankruptcy court granted that motion. (R.1-5879, Ex. B.) But, the Maryland district court vacated the bankruptcy court's injunction and stayed the appeal of the bankruptcy court's rulings on NYLCare's proof of claim and Doctors Health's breach of contract judgment pending consideration by the Southern District of Florida as to whether the Agreement operated to release the claim Doctors Health pursued against NYLCare in the adversary action. (R.1-5879, Ex. C.)

In the Southern District of Florida, the judge who approved the settlement between the *Shane* plaintiffs and Aetna considered whether Doctors Health's claims against NYLCare were released by operation of the Agreement. (R.1-5960.) He concluded that Doctors Health was a member of the settlement class, that Doctors Health received adequate notice of the settlement, and that Doctors Health failed to timely opt out of the settlement. (*Id.* at 2.) He further concluded that the claim Doctors Health had pursued against NYLCare in the adversary action was released by the Agreement. (*Id.*) And, he enjoined Doctors Health from pursuing that claim. (*Id.*)

## II. ISSUES ON APPEAL & CONTENTIONS OF THE PARTIES

Doctors Health appeals the Southern District of Florida injunction.[1] Doctors Health contends that the claim it prosecuted in the adversary action was not released because: (1) Doctors Health was not a member of the settlement class and therefore not a party to the Agreement; (2) Doctors Health was not given adequate notice of the settlement or the Agreement; and (3) the scope of the release of claims in the Agreement does not include the claim Doctors Health pursued in the adversary action. In the alternative, Doctors Health contends that, in the interests of justice, it should be given the opportunity to opt out of the settlement. Finally, Doctors Health contends that Aetna should be estopped from asserting that Doctors Health's claim against NYLCare was released by the Agreement because Aetna did not make that argument until after the judgment in the adversary action.

Aetna contends that the district court did not abuse its discretion by enjoining Doctors Health's pursuit of the claim it prosecuted against NYLCare in the adversary action because Doctors Health was a Physician Organization member of the class, received adequate notice of the settlement, and did not timely opt out of the

---

[1] The parties assert that we have jurisdiction to consider this appeal pursuant to 28 U.S.C. § 1292(a)(1). We agree. The order appealed from grants or modifies an injunction. By its own terms, the order grants a new injunction against Doctors Health. And, even if the order is considered one clarifying the injunction issued by the district court on November 6, 2003, it is a modification of that existing injunction. *Birmingham Fire Fighters Ass'n 117 v. Jefferson County*, 280 F.3d 1289, 1293 (11th Cir. 2002).

Agreement. Aetna also contends that the release language of the Agreement is sufficiently broad to cover the claim Doctors Health pursued in the adversary action. Aetna opposes Doctors Health's request for an opportunity to opt out after the deadline.

## III.  STANDARDS OF REVIEW

We review a district court's injunction of related litigation pending in another federal court for abuse of discretion. *See Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1285 (11th Cir. 2007) ("'In reviewing the district court's decision to grant an injunction, including an injunction under the All Writs Act, we apply an abuse-of-discretion standard.'") (quoting *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1096 (11th Cir. 2004)); *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1132 n.22 (11th Cir. 2005) (explaining that "injunction enjoining related federal proceedings" in class-action context is properly issued under All Writs Act and citing *In re Managed Care Litig.*, 236 F. Supp. 2d 1336 (S.D. Fla. 2002)).

This court also reviews denials of requests for extensions of time to opt out and denials of assertions of judicial estoppel under the abuse-of-discretion standard. *See Stephens v. Tolbert*, 471 F.3d 1173, 1175 (11th Cir. 2006); *Grilli v. Metropo. Life Ins. Co.*, 78 F.3d 1533, 1538 (11th Cir. 1996).

"A district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100, 116 S. Ct. 2035, 2047 (1996) (citation omitted), superseded by statute on other grounds as noted in *United States v. Mandhai*, 375 F.3d 1243, 1249 (11th Cir. 2004). We consider questions of law de novo. *Tally-Ho, Inc. v. Coast Cmty. College Dist.*, 889 F.2d 1018, 1022 (11th Cir. 1989). But, the district court's factual findings will be reversed only if clearly erroneous. *Id.* (citing *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1529 (11th Cir. 1985)); *see also Gold Coast Publ'ns, Inc. v. Corrigan*, 42 F.3d 1336, 1343 (11th Cir. 1994).

## IV. DISCUSSION

We find resolution of one issue in this case dispositive of the entire appeal. We assume (but do not decide) that Doctors Health falls within the Agreement's definition of a member of the class and that Aetna gave Doctors Health adequate notice of the settlement and the Agreement. Nevertheless, we hold that the district court's injunction must be vacated because the Agreement does not release the claim Doctors Health pursued against NYLCare in the adversary action.

It is clear from the Agreement that only claims "based on or arising from the factual allegations of the [*Shane*] Complaint" were released by virtue of the settlement. (R.1-2000, Ex. B at 72, ¶ 13(a).) Review of the *Shane* complaint reveals

9

that all of its factual allegations concern the defendant managed-care companies' financial relationships with the providers of medical services. The gist of the complaint is that defendants, including Aetna, did not treat providers of medical services fairly–failing to pay them what they were owed when covered and medically necessary services were rendered; manipulating the capitation system[2] to underpay medical providers; and using their market dominance to coerce medical providers into accepting contract terms unfair to medical providers. The complaint includes allegations that the defendants denied payments to physicians on the basis of financial criteria rather than lack of coverage or medical necessity; used automated programs to systematically manipulate reimbursement codes and artificially reduce the amount paid physicians; delayed payments to physicians; and covertly manipulated the capitation system to undermine its actuarial basis and deprive physicians of payments to which they were entitled.[3] (R.1-1607 ¶¶ 5-7, 84-111.)

---

[2]Under a capitation system, medical providers are paid based on the number of patients they agree to treat rather than on a fee-for-service basis. (R.1-1607 ¶ 102.)

[3]The *Shane* complaint alleges that, while capitation rolls are supposed to include all the patients enrolled in a managed-care plan and medical providers were to be paid on a per-enrollee basis, the managed-care companies manipulated the capitation rolls to include only those enrollees who sought treatment, "thus dramatically altering the actuarial underpinnings of the capitation agreement by withholding payments for 'well' members that are needed to offset the cost of treating the sick." (R.1-1607 ¶ 105.) The complaint also alleges that the managed-care companies inflated charges against the capitation payments due medical providers based upon false drug costs and used false year-end statements to avoid paying contractually-required incentives to the medical providers. (*Id.* ¶¶ 106-09.)

10

The *Shane* complaint also alleges that the defendants, through their "overwhelming economic power and market dominance," coerced plaintiffs "into providing care under Defendants' policies and practices on a 'take it or leave it' basis, and providing care on a capitated as opposed to fee for service basis pursuant to 'all products' requirements." (*Id.* ¶ 113.) The complaint further alleges:

> Defendants further wield their economic power and market dominance in a coercive manner by reserving the right to unilaterally amend contracts with physicians, refusing to provide information concerning pricing or fee structures to Plaintiffs or class members, and failing to provide any feasible mechanism for review of the automated payment reductions – all in furtherance of the scheme described above.

(*Id.* ¶ 114.) Specific to Aetna, the *Shane* Complaint alleges an instance of extortion in which Aetna allegedly threatened an identified physician with telling his patients that he had resigned from the Aetna network if he did not sign a contract with Aetna within forty-eight hours. When the physician asked for clarification of some contractual provisions and a fee schedule, Aetna terminated its relationship with him, "threatening the viability of his practice and ending numerous longstanding physician/patient relationships." (*Id.* ¶¶ 156–57.)

The claim pursued by Doctors Health in the adversary action shares no factual basis with the *Shane* complaint. While *Shane* alleged that the managed-care companies underpaid providers of medical services, the breach of contract claim

11

resolved in the adversary action hinged on Doctors Health's allegation that NYLCare breached its Medicare HMO management agreement with Doctors Health by failing to renew its Medicare agreements with the government and then prematurely terminating the Medicare HMO management agreement it had with Doctors Health. Indeed, in awarding Doctors Health more than $21 million, the bankruptcy court found "from the evidence that the true reason for the decision not to renew the HCFA contract was a business decision by Aetna to discontinue its NYLCare65 Plan, which amounted to a breach of contract." (R.1-5879, Ex. H at 38.)

While the adversary action complaint does contain some allegations regarding payments to providers of medical services, those allegations are that NYLCare breached its agreement with Doctors Health by failing to pay medical providers the lowest negotiated rate for their services. (R.1-5879, Ex. A ¶¶ 35-36.) In other words, unlike the plaintiffs' allegations in *Shane*, Doctors Health alleged that NYLCare <u>overpaid</u> medical providers. Further, the *Shane* complaint makes no allegations regarding the NYLCare Medicare HMO management contract. Indeed, the *Shane* complaint makes no allegations whatsoever regarding any contracts between managed-care companies like NYLCare and Aetna and companies like Doctors Health that administered or managed the managed-care companies' insurance plans.

12

Aetna also argues that, even if the factual allegations of the *Shane* complaint do not support the claim Doctors Health brought in the adversary action, the *Shane* complaint could have been amended to allege the necessary facts. But the Agreement is unambiguous. It does not release claims that could have been asserted based on or arising out of factual allegations that could have been added by amendment to the *Shane* Complaint. The release language is clear; it concerns only claims that could have been asserted "based on or arising from the factual allegations of the [*Shane*] Complaint." (R.1-2000, Ex. B at 72, ¶ 13(a).) The only reasonable reading of this clause is that the scope of claims released is limited to those claims that could have been asserted based on or arising out of the factual allegations of the existing *Shane* complaint (the second amended consolidated class action complaint), not some hypothetical complaint that might result from amendment.[4]

_____

[4]Whether the *Shane* complaint could have been amended to state facts supporting the claim pursued in the adversary action is doubtful. Under the Medicare HMO management contract between NYLCare and Doctors Health, Doctors Health was essentially NYLCare's subcontractor. (R.1-5879, Ex. A ¶¶ 11-13.) In light of that relationship, we question whether Doctors Health shared the medical provider class members' interests in *Shane* and whether amendment of the *Shane* complaint to state facts supporting the claim Doctors Health pursued in the adversary action could have been accomplished in a manner that would satisfy Federal Rule of Civil Procedure 23. *See* Fed. R. Civ. P. 23(a)(3) & (4) (requiring that class representatives' claims are typical of the claims of the class members and that class representatives fairly and adequately protect the interests of the class).

Indeed, the *Shane* complaint states that the functions performed by entities like Doctors Health are "delegated functions on behalf of and at the direction of the Defendants pursuant to mandated policies and procedures. The [entities like Doctors Health] are monitored and audited by the Defendants, and the delegated functions may be revoked at any time. In performing these delegated functions[, these entities] are mere conduits through which the Defendants conduct business. [They] are not co-conspirators of the Defendants, and, lacking the requisite intent, do not aid and abet the unlawful conduct described herein." (R.1-1607 ¶ 46.) The allegation that the

13

Having decided that the claim pursued by Doctors Health in the adversary action is beyond the scope of the release in the Agreement, we conclude that the district court erred in enjoining Doctors Health from pursuing that claim. We need not address the remaining arguments of the parties.

## V. CONCLUSION

The district court's order and injunction, dated January 21, 2009, prohibiting Doctors Health from pursuing its adversary action claim against NYLCare are vacated.

INJUNCTION VACATED.

---

relationships between the managed-care defendants and entities like Doctors Health "may be revoked at any time" is inconsistent with Doctors Health's claim in the adversary action that NYLCare breached its contract with Doctors Health by prematurely terminating that contract.