[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14379
_____

D.C. Docket No. 8:10-cv-02937-VMC-TGW

CATHY JACKSON-PLATTS,
Personal Representative, of the Estate of
Juanita Amelia Jackson,
f.k.a. Catherine Whatley,

Plaintiff-Appellee,

versus

GENERAL ELECTRIC CAPITAL CORPORATION,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____
(August 22, 2013)

Before MARCUS and PRYOR, Circuit Judges, and FRIEDMAN,[*] District Judge.

MARCUS, Circuit Judge:

_____

[*] Honorable Paul L. Friedman, United States District Judge for the District of Columbia, sitting by designation.

At issue today are two basic questions: whether this cause of action -- a supplementary proceeding under Florida Statutes section 56.29(6) -- is an independent "civil action" removable to federal district court under 28 U.S.C. § 1441, or whether it is merely an ancillary proceeding; and second, accepting that the cause of action was properly removable, whether the district court abused its discretion by remanding the case to state court under the Colorado River abstention doctrine. The appellee, the Estate of Juanita Amelia Jackson, could not collect on a judgment because assets were allegedly fraudulently transferred to General Electric Capital Corporation ("GE") and Rubin Schron. It therefore initiated a supplementary proceeding in a Florida state court under Florida Statutes section 56.29(6), which allows a court to void any transfer of personal property that is made by a judgment debtor to "delay, hinder or defraud." GE timely removed the supplementary proceeding to federal district court, and the appellee moved to remand the proceeding, arguing that it was an ancillary proceeding, not an independent "civil action." The district court rejected this argument but nonetheless remanded because it concluded the Colorado River abstention doctrine applied. GE appealed.

After thorough review, we reverse and remand for further proceedings. The supplementary proceeding here is an independent civil action because it seeks to impose new liability on new parties founded on wholly new legal theories and

2

based on a completely different factual matrix. As for the <u>Colorado River</u> doctrine,

Justice Brennan once said that federal courts have "the virtually unflagging

obligation . . . to exercise the jurisdiction given them," <u>Colorado River Water

Conservation District v. United States</u>, 424 U.S. 800, 817 (1976), and this case

presents nothing so extraordinary as to eviscerate that obligation.

## I.

The complex factual and procedural history surrounding this case began in

2003, when Juanita Amelia Jackson ("Jackson") lived at the Auburndale Oaks

Healthcare Center, a nursing home in Polk County, Florida, operated by Trans

Healthcare, Inc. and Trans Health Management, Inc.[1] Soon after, Jackson was

released from the nursing home, and later died on July 6, 2003. About a year later,

the Estate of Juanita Amelia Jackson ("Estate"), through Cathy Jackson-Platts,

sued thirteen defendants, including Trans Healthcare and Trans Management,

alleging that their negligence caused Jackson's death.[2] The Estate sued in the

Tenth Judicial Circuit Court of Florida. During the course of the initial litigation

---

[1] We refer to Trans Healthcare, Inc. as "Trans Healthcare," and we refer to Trans Health Management, Inc. as "Trans Management." When referring to both entities collectively, we refer to them as "the Trans Health defendants."

[2] The other defendants were Briar Hill, Inc.; Lyric Health Care Holdings III, Inc.; Lyric Health Care LLC; TFN Healthcare Investors, LLC; HIS Acquisition No. 153, Inc.; Alliance Health Care Services, Inc.; Integrated Health Services, Inc.; Daniel Beeler; Richard Kuhlmeyer; Rebecca Bachman; and Barbara Brown.

(the "underlying tort action"), the Estate dropped its suit against all but the Trans Health defendants.

While the Florida tort action was proceeding, Trans Healthcare filed in a Maryland circuit court a voluntary petition for the appointment of a receiver to preserve its assets and protect its creditors. The Maryland court agreed, appointed a receiver, and stayed all judicial actions against Trans Healthcare. With the Maryland court's order in hand, the Trans Health defendants moved the Florida circuit court to stay the underlying tort action; the Florida court denied the motion and, because a default judgment was entered against the Trans Health defendants, proceeded to a trial to determine damages. After some three days of trial, the jury returned a verdict for the Estate in the underlying tort action in the amount of $10 million in compensatory damages, and added $100 million in punitive damages. The state circuit court entered final judgment against Trans Healthcare and Trans Management, holding each liable to the Estate in the amount of $55 million. Notably, the Trans Health defendants never appealed from the Florida court's judgment.

In December 2010, the Estate commenced, again in Florida's Tenth Judicial Circuit Court, the action now pending on appeal, which we'll call the "first supplementary proceeding." The Estate brought this supplementary proceeding under Florida Statutes section 56.29, which allows a plaintiff with an unsatisfied

4

judgment to open "proceedings supplementary to execution." Fla. Stat. § 56.29(1). In this proceeding, the Estate moved the court to add General Electric Capital Corporation ("GE") and Rubin Schron ("Schron") as new defendants to the underlying tort action and to enter final judgment against them for $110 million. The state court added GE and Schron as defendants and directed them to show cause why the assets allegedly transferred to them by the Trans Health defendants should not be declared fraudulently acquired and levied upon to satisfy the Trans Health defendants' $110 million final judgment.

The liability of GE and Schron supposedly arose out of a conspiracy between GE and Schron that was designed to strip the Trans Health defendants of all of their assets. According to the Estate, GE gained control over the Trans Health defendants. With Schron's aid, GE abused this control and syphoned off the Trans Health defendants' assets. Allegedly to cover their tracks, GE and Schron had Trans Healthcare file the receivership petition in Maryland state court and then used the receivership order in a fraudulent, albeit failed attempt to stay the underlying tort action. GE and Schron purportedly undertook these actions to delay, hinder, and defraud creditors, including the Estate.

On December 30, 2010, GE timely removed the first supplementary proceeding to the United States District Court for the Middle District of Florida. In its notice of removal, GE claimed that Jackson was a citizen of Florida, thereby

5

making the Estate a citizen of Florida under 28 U.S.C. § 1332(c)(2) (providing that "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent"). Neither GE nor Schron was a citizen of Florida,[3] and since the Estate demanded that the new defendants pay $110 million, the first supplementary proceeding met the requirements of complete diversity of citizenship and an amount in controversy over the $75,000 threshold. The Estate nevertheless moved to remand the case to state circuit court because, it claimed, a supplementary proceeding under Florida law did not constitute a "civil action" and thus was not removable under 28 U.S.C. § 1441. See 28 U.S.C. § 1441(a) (providing for removal of "any civil action" over which "the district courts of the United States have original jurisdiction"). According to the Estate, the first supplementary proceeding was merely ancillary to the underlying tort action. A magistrate judge recommended that the district court deny the motion to remand, because the Estate's "claim for fraudulent transfer of funds against the impled defendants is removable." In particular, the magistrate judge observed that this case was analogous to a garnishment proceeding, and that this Court's precedents hold that garnishment actions are removable civil actions under 28 U.S.C. § 1441. The Estate filed its objections to the magistrate judge's Report and

---

[3] Nor were Trans Healthcare or Trans Management citizens of Florida, so neither ruins the requirement for complete diversity.

6

Recommendation, and thereafter the district court adopted the Report and Recommendation and denied the motion to remand.

Soon after it had objected to the magistrate judge's recommendation in the first supplementary proceeding, the Estate initiated a second supplementary proceeding in Florida's Tenth Judicial Circuit Court (the "second supplementary proceeding"). Again the Estate alleged a conspiracy to strip the Trans Health defendants of their assets. And again the Estate asked the state circuit court to add fourteen new defendants, who it claimed were conspirators, to the underlying tort action.[4] None of the fourteen new defendants were parties in either the underlying tort action or the first supplementary proceeding.

The second supplementary proceeding followed the same track as the first one. It was removed by eleven of the defendants from the Florida circuit court to the United States District Court for the Middle District of Florida. Thereafter the Estate moved to remand the second supplementary proceeding to state court, again arguing that the supplementary proceedings were merely ancillary proceedings to the underlying tort action and therefore were not removable to federal district court. Unlike in the first supplementary proceeding, the motion to remand was

---

[4] The new defendants were Leonard Grunstein; Murray Forman; GTCR Golder Rauner LLC; GTCR Partners VI LP; THI of Baltimore Inc.; GTCR Fund VI LP; Edgar D. Jannotta; Ventas Inc.; Ventas Realty LP; Fundamental Administrative Services LLC; Fundamental Long Term Care Holdings LLC; Fundamental Long Term Care Inc.; Troutman Sanders LLP; and Concepcion, Sexton & Martinez P.A.

7

granted in the second one by a different federal judge. See Estate of Jackson v. Ventas Realty, Ltd. P'ship, 812 F. Supp. 2d 1306 (M.D. Fla. 2011).

Not surprisingly, after the second supplementary proceeding was remanded, the Estate moved the district court in the first supplementary proceeding for reconsideration. Relying on the order remanding the second supplementary proceeding, the Estate argued that the district court should remand the first supplementary proceeding too. This time, the district court granted the Estate's motion for reconsideration, and remanded the first supplementary proceeding to the state circuit court, but not for any of the reasons offered by the Estate. Rather, the district court sua sponte decided to abstain under the Colorado River abstention doctrine. Because the second supplementary proceeding had been remanded, the district court reasoned, there was now a parallel state court proceeding. Moreover, in the district court's view, four of the six Colorado River factors tipped in favor of abstention. GE timely appealed the district court's remand order to this Court.

## II.

An abstention-based remand order is appealable as a final order. Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 713-15 (1996). Because the district court relied on the Colorado River abstention doctrine to remand this case, we may review the district court's decision. See id. We review de novo issues of subject matter jurisdiction. Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405,

8

408 (11th Cir. 1999). "We review for abuse of discretion a district court's dismissal on <u>Colorado River</u> abstention grounds." <u>TranSouth Fin. Corp. v. Bell</u>, 149 F.3d 1292, 1294 (11th Cir. 1998). A district court will abuse its discretion if it makes an error of law or makes a clearly erroneous factual finding. <u>See</u> <u>Doctors Health, Inc. v. Aetna (In re Managed Care Litig.)</u>, 605 F.3d 1146, 1150 (11th Cir. 2010) (per curiam).

According to the Estate, the district court properly remanded the first supplementary proceeding for two independent reasons: both because supplementary proceedings under Florida Statutes section 56.29(6) are ancillary and therefore may not be removed to federal district court; and because even if section 56.29(6) supplementary proceedings are removable, the district court properly abstained under <u>Colorado River</u>.

Federal courts are courts of limited jurisdiction, and therefore "we are obliged to 'scrupulously confine [our] own jurisdiction to the precise limits which the statute has defined.'" <u>Underwriters at Lloyd's, London v. Osting-Schwinn</u>, 613 F.3d 1079, 1086 (11th Cir. 2010) (alteration in original) (quoting <u>Healy v. Ratta</u>, 292 U.S. 263, 270 (1934)). "Because matters of jurisdiction affect our authority to reach the merits of the appeal, we discuss first the subject-matter jurisdiction of the district court." <u>Romero v. Drummond Co.</u>, 552 F.3d 1303, 1314 (11th Cir. 2008).

Consequently, we begin with whether this section 56.29(6) proceeding is removable.

## A.

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a) (emphasis added). Everyone agrees that the first supplementary proceeding meets the statutory requirements for diversity jurisdiction -- complete diversity between the parties and an amount in controversy exceeding $75,000. Id. § 1332(a). But the Estate and GE disagree on whether a supplementary proceeding under Florida law is a "civil action" as required by § 1441. Usually, "[t]he limitation to civil actions is not particularly important because the federal courts have broadly construed the term," 14B Charles Alan Wright et al., Federal Practice and Procedure § 3721 (4th ed. 2009), but the term "civil action" is not without limit. The federal courts have generally construed the phrase to require a suit separate from, and not ancillary to, a suit in state court. See, e.g., Travelers Prop. Cas. v. Good, 689 F.3d 714, 724 (7th Cir. 2012) ("The statute has long been interpreted to allow removal only of 'independent suits' but not ancillary or 'supplementary' proceedings."); Ohio v. Doe, 433 F.3d 502, 506 (6th Cir. 2006)

10

("'[C]ivil action' has long been interpreted to require a separate suit that is not ancillary, incidental, or auxiliary to a suit in state court."); Armistead v. C&M Transp., Inc., 49 F.3d 43, 46 (1st Cir. 1995) ("[T]he supplementary superior court proceeding does not independently qualify as a removable 'civil action' . . . ."). The Estate maintains that the first supplementary proceeding is in fact ancillary to the underlying tort action. We disagree.

Whether litigation is properly characterized as an independent civil action "under § 1441 is essentially a matter of federal law." Butler v. Polk, 592 F.2d 1293, 1296 n.7 (5th Cir. 1979).[5] Still, "to totally ignore the structure of state procedural law would reflect an overly-procrustean view." Id. Under our settled precedent, actions are not ancillary and are instead independent civil actions when they are "in effect suits involving a new party litigating the existence of a new liability." Id. at 1296. Here, the Estate has attempted to impose new liability on new parties.

Undeniably, the Estate has sued new parties (GE and Schron) in the first supplementary proceeding. The Estate never sued, served, or summoned GE in the underlying tort action. Nor did it sue, serve, or summon Schron. The Estate also seeks to impose new liability upon GE and Schron based on a wholly new theory.

---

[5] Fifth Circuit decisions issued before the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit. See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

11

In the underlying tort action, the Estate recovered against the defendants for the nursing home's negligent failure to properly hire, retain, and supervise a nursing staff and its negligent failure to provide professional care. The underlying tort action concerned the events surrounding Jackson's stay at Auburndale Oaks Healthcare Center. In sharp contrast, the first supplementary proceeding concerns loans made a year before Jackson died, Trans Healthcare's stock transfers after Jackson died, loan agreements between GE and Trans Healthcare executed long after Jackson died, and GE's actions in a Maryland receivership action commenced nearly six years after Jackson died. Factually, the first supplementary proceeding is wholly unconcerned with, and unconnected to the Auburndale Oaks Healthcare Center or Jackson's death. Legally, it is wholly unconcerned with negligence. This is, in every way, a "suit[] involving a new party litigating the existence of a new liability." Butler, 592 F.2d at 1296. Because the first supplementary proceeding is an independent civil action, GE could remove it to federal district court. See Travelers Prop., 689 F.3d at 724 ("[W]here the supplemental proceeding is not merely a mode of execution or relief, but where it, in fact, involves an independent controversy with some new and different party, it may be removed into the federal court." (internal quotation marks omitted)).

The structure of section 56.29(6) of Florida's Civil Practice and Procedure statutes and the Florida state courts' interpretation of this statute further support

12

our determination. Far from simply being a means to execute a judgment, section 56.29(6) supplementary proceedings afford judgment creditors independent substantive claims. The statute also affords parties stout procedural guarantees not generally found in ancillary proceedings. Section 56.29 provides a robust, diverse tool to a party, like the Estate, with an unsatisfied judgment. There may be many reasons why a judgment goes unsatisfied: the losing defendant might refuse to pay out of spite; the party may stash his wealth in a bank to avoid payment; or the party may transfer his money to a family member. Section 56.29 allows a judgment creditor -- that is, a plaintiff with an unsatisfied judgment, like the Estate -- to collect on a judgment in these situations. Under section 56.29, a judgment creditor may initiate a supplementary proceeding in the very court in which the judgment creditor obtained the unsatisfied judgment. The judgment creditor is required to file an affidavit stating that he has an unsatisfied judgment, identifying the court that issued the judgment and the unsatisfied amount of the judgment, and indicating that execution on the judgment is valid and outstanding. Fla. Stat. § 56.29(1).

Once the supplementary proceeding is underway, a judgment creditor has several options. If he believes the defendant who has not satisfied the judgment (i.e., the judgment debtor) has enough assets to pay, the judgment creditor may request that the trial court require the judgment debtor to appear in court for an

13

examination. Id. § 56.29(2); see also Jim Appley's Tru-Arc, Inc. v. Liquid Extraction Sys. Ltd. P'ship, 526 So. 2d 177, 179 (Fla. 2d Dist. Ct. App. 1988) ("A judgment creditor should be allowed broad discovery into the debtor's finances . . . ."). The judgment debtor would then testify as to "all matters and things pertaining to the business and financial interests" of the judgment debtor. Fla. Stat. § 56.29(4). So here, if it thought the Trans Health defendants had any assets, the Estate could have forced the Trans Health defendants to testify about their financial interests. Or the judgment creditor could use the supplementary proceedings to recover the judgment debtor's assets in the hands of another person, so long as the property is not exempt from execution. Fla. Stat. § 56.29(5). Thus, for example, if the Trans Health defendants hid money in a bank account, the Estate could use a supplementary proceeding to try to recover the Trans Health defendants' money from the bank. See id. ("The judge may order any property of the judgment debtor, not exempt from execution, in the hands of any person or due to the judgment debtor to be applied toward the satisfaction of the judgment debt.").

Lastly, section 56.29(6) gives judgment creditors detailed means by which to void fraudulent transfers from a judgment debtor to another party.[6] Under 56.29(6),

---

[6] In full, section 56.29(6) provides:

14

when a judgment debtor gifts, transfers, assigns, or somehow conveys personal property to another person in order to delay, hinder, or defraud the judgment creditor, a court shall void the transfer in a supplementary proceeding. Id. § 56.29(6)(b). And when the transfer is made by the judgment debtor to an insider -- like the judgment debtor's spouse or relative -- within a year of being served with process, it is the judgment debtor's burden to establish a lack of intent to delay, hinder, or defraud the judgment creditor. Id. § 56.29(6)(a); see also Treated Timber Prods., Inc. v. S & A Assocs., 488 So. 2d 159, 160 (Fla. 1st Dist. Ct. App. 1986). That said, section 56.29(6) "does not authorize seizure of property exempted from levy . . . or property which has passed to a bona fide purchaser for value and without notice." Fla. Stat. § 56.29(6)(b).

---

(a) When, within 1 year before the service of process on him or her, defendant has had title to, or paid the purchase price of, any personal property to which the defendant's spouse, any relative, or any person on confidential terms with defendant claims title and right of possession at the time of examination, the defendant has the burden of proof to establish that such transfer or gift from him or her was not made to delay, hinder, or defraud creditors.

(b) When any gift, transfer, assignment or other conveyance of personal property has been made or contrived by defendant to delay, hinder or defraud creditors, the court shall order the gift, transfer, assignment or other conveyance to be void and direct the sheriff to take the property to satisfy the execution. This does not authorize seizure of property exempted from levy and sale under execution or property which has passed to a bona fide purchaser for value and without notice. Any person aggrieved by the levy may proceed under §§ 56.16-56.20.

Id. § 56.29(6).

15

In the first supplementary proceeding the Estate traveled under section 56.29(6): the Estate alleged that the Trans Health defendants gifted, transferred, assigned, or otherwise conveyed their assets to GE and Schron precisely in order to delay, hinder, or defraud the Estate as judgment creditor. The Estate's cause of action added new parties to the lawsuit, squarely raised new questions of intent to defraud creditors, and introduced new issues about bona fide purchases. These additional issues are wholly unrelated to the underlying tort action and make section 56.29(6) sharply different from an ancillary action to enforce an existing judgment.

Since section 56.29(6) requires an intent to delay, hinder, or defraud creditors, a proceeding under that section involves an issue of substantive law that is independent of the underlying action. In fact, Florida's courts have acknowledged this, using their interpretation of Florida's Uniform Fraudulent Transfer Act, Fla. Stat. §§ 726.101-.201, commonly known as UFTA, to give meaning to and interpret the "delay, hinder or defraud" language found in section 56.29(6). See, e.g., Pollizzi v. Paulshock, 52 So. 3d 786, 789-90 (Fla. 5th Dist. Ct. App. 2010) (upholding judgment in proceeding supplementary where judgment creditor proved fraudulent transfer under the UFTA); Mejia v. Ruiz, 985 So. 2d 1109, 1112 (Fla. 3d Dist. Ct. App. 2008) ("Whether a defendant's actions are made or contrived to 'delay, hinder, or defraud' must be determined with reference to

16

[the UFTA]."); <u>Nationsbank, N.A. v. Coastal Utils., Inc.</u>, 814 So. 2d 1227, 1229 (Fla. 4th Dist. Ct. App. 2002) ("In determining whether a transfer to a third party is invalid, as a fraud on creditors, the Uniform Fraudulent Transfer Act (UFTA) applies."); <u>Morton v. Cord Realty, Inc.</u>, 677 So. 2d 1322, 1324 (Fla. 4th Dist. Ct. App. 1996) ("The manner in which a defendant may prove that a transfer was not fraudulent is governed by case law and the UFTA.").

Thus, the substance of the Estate's legal claims is governed by Florida's Uniform Fraudulent Transfer Act, which is undoubtedly a substantive statute that imposes liability. <u>See</u> Fla. Stat. § 726.108 (reciting remedies available under the UFTA, including avoidance of transfer, attachment against transferred assets, and an injunction against further transfers); <u>Invo Fla., Inc. v. Somerset Venturer, Inc.</u>, 751 So. 2d 1263, 1265 (Fla. 3d Dist. Ct. App. 2000) (per curiam) ("Invo claims that the fraudulent transfer is an independent tort because it involves different elements, different remedies, and a different set of acts from those which breached the contract. We agree . . . ."). And the statute imposes liability based on factors wholly unrelated to the underlying tort action. "Proof of fraud requires proof of intent," and courts discover this intent by analyzing "badges of fraud" listed in the UFTA. <u>Mejia</u>, 985 So. 2d at 1113. These "badges" include, among others, whether the transfer was to an insider, whether the debtor retained possession or control of

17

the property transferred, whether the transfer was concealed, and whether the transfer was substantially all the debtor's assets. See Fla. Stat. § 726.105(2).

Indeed, had the Estate sued GE and Schron in state court under the Uniform Fraudulent Transfer Act, the lawsuit plainly would have been a "civil action" under § 1441. As the Estate conceded at oral argument, GE could have removed this hypothetical UFTA action without any question. See Freeman v. First Union Nat'l, 329 F.3d 1231, 1233-34 (11th Cir. 2003) (certifying Florida UFTA question to Florida Supreme Court because district court exercised diversity jurisdiction). In this UFTA case, the Estate would have sought to present evidence of badges of fraud, showing that the Trans Health defendants fraudulently transferred assets to GE and Schron, and GE and Schron undoubtedly would have sought to present evidence to rebut the badges of fraud. In the actual case -- the first supplementary proceeding -- the proofs are identical. We can see no reason to conclude that a lawsuit brought under Florida's Uniform Fraudulent Transfer Act is a "civil action" but that essentially the same lawsuit, wrapped in the procedures of section 56.29(6), is not.

What's more, Florida's courts have provided substantial procedural safeguards in section 56.29(6) supplementary proceedings that also suggest the proceedings are not merely ancillary. When a third party, like GE, is brought into a section 56.29(6) supplementary proceeding, the third party has an opportunity to

18

raise defenses and protect its interests in a manner wholly consonant with genuine due process. See Mejia, 985 So. 2d at 1112. And while a court may enter a new, final judgment against a third party, see Pollizzi, 52 So. 3d at 789; Mash v. Express One Int'l, Inc., 585 So. 2d 1154, 1155 (Fla. 4th Dist. Ct. App. 1991), it may do so only if the third party is brought into the supplementary proceeding as an actual party and is given a fair opportunity to present its defenses, see Morton, 677 So. 2d at 1324; Juno by the Sea Condo. Apartments, Inc. v. Juno by the Sea N. Condo. Ass'n (The Tower), Inc., 419 So. 2d 399, 400 (Fla. 4th Dist. Ct. App. 1982) (per curiam). In fact, under Florida law, in proceedings supplementary against a third party, "the ordinary right to a jury trial of issues of fact developed in such a case should not be denied" if the third party's claim to the disputed property "could only be properly asserted and adjudicated against him in a statutory claim proceeding." State ex rel. Phoenix Tax Title Corp. v. Viney, 163 So. 57, 60 (Fla. 1935) (emphasis added). Florida's recognition that section 56.29(6) supplementary proceedings against third parties may require a jury trial also undermines the Estate's claim that these are merely ancillary proceedings.

Nevertheless, the Estate disputes GE's and Schron's right to a jury trial in a supplementary proceeding. It argues that the parties "are meant to have a swift summary proceeding without a right to a jury trial." The Estate relies on the fact that, while the third party has the right to defend itself, a court may conclude that a

19

transfer was fraudulent in an expedited proceeding, which does not require a jury trial. See Ferguson v. State Exch. Bank, 264 So. 2d 867, 867-68 (Fla. 1st Dist. Ct. App. 1972) (per curiam). But the supplementary proceeding does not end there. After the expedited proceeding, the court may order the sheriff to seize the third party's property, Fla. Stat. § 56.29(6)(b), and the court's order would trigger procedural safeguards -- codified at sections 56.16 through 56.20 -- for the third party. Id. Thus, a third party may stop the sheriff from taking his property by filing, with the sheriff, an affidavit "that the property claimed belongs to him" and by furnishing "a bond with surety" to the sheriff. Id. § 56.16. By filing the affidavit and bond, the third party guarantees its right to a jury trial "to try the right of property." Id. § 56.18. Contrary to the Estate's assertion, under section 56.29(6) a third party may seek a jury trial in a supplementary proceeding. See Dezen v. Slatcoff, 66 So. 2d 483, 485 (Fla. 1953) (upholding court's denial of jury trial in proceeding supplementary but recognizing that third party could request jury trial upon filing of bond).

Quite simply, Florida's courts have treated a section 56.29(6) supplementary proceeding as a substantive, independent action.[7] They've done so by

---

[7] Florida state courts have at times described supplementary proceedings as modes of execution or as ancillary proceedings. See, e.g., Buckley v. Pappas, 2 So. 3d 376, 378 (Fla. 4th Dist. Ct. App. 2008). Seizing on these cases, the Estate says that supplementary proceedings are swift, efficient post-judgment proceedings to execute judgments. The Estate's argument oversimplifies Florida law. The fact that some supplementary proceedings are ancillary does not mean that all supplementary proceedings are ancillary. Not surprisingly, those Florida cases that describe

incorporating the substantive standards found in the UFTA, without regard to the lawsuit that gave rise to the disputed judgment, and by guaranteeing to third parties the most fundamental procedural safeguard -- a jury trial.

Although the answer here is clear, we find further support in our precedent. Thus, for example, we have concluded that "garnishment actions against third-parties are generally construed as independent suits, at least in relation to the primary action." Butler, 592 F.2d at 1295. As a result, we have twice allowed removal of such garnishment actions. See Webb v. Zurich Ins. Co., 200 F.3d 759, 760 (11th Cir. 2000); Butler, 592 F.2d at 1296. We have done so because these garnishment actions were "in effect suits involving a new party litigating the existence of new liability." Butler, 592 F.2d at 1296 (emphases added). We are not alone in this determination. See, e.g., Swanson v. Liberty Nat'l Ins. Co., 353 F.2d

---

supplementary proceedings as ancillary actions are not describing supplementary proceedings brought under section 56.29(6). Unlike here, they describe supplementary proceedings brought by a judgment creditor against a judgment debtor, that is, brought by a party to the underlying case against a party to the underlying case. See, e.g., id. at 377 (noting that proceeding supplementary was against defendant in underlying litigation); Zureikat v. Shaibani, 944 So. 2d 1019, 1020-21 (Fla. 5th Dist. Ct. App. 2006) (noting that appellant on proceeding supplementary was judgment debtor); Luskin v. Luskin, 616 So. 2d 559, 559-60 (Fla. 4th Dist. Ct. App. 1993) (same). The opinions the Estate relies on are inapposite, and they do not hold that supplementary proceedings under section 56.29(6) are always ancillary actions. In fact, Florida state courts have recognized that supplementary proceedings under subsection 56.29(6)(b) are different from supplementary proceedings under other subsections of the statute. See Advertects, Inc. v. Sawyer Indus., 84 So. 2d 21, 23 (Fla. 1955) ("[A supplementary] proceeding constitutes a separate legal cause from that of the main suit in which the judgment is procured . . . ."); Dezen, 66 So. 2d at 485 ("This section of the law is independent of the other sections above discussed."); see also id. at 484-85 (outlining these differences).

21

12, 13 (9th Cir. 1965) (holding that garnishment is independent civil action for purposes of 28 U.S.C. § 1441); Randolph v. Emp'rs Mut. Liab. Ins. Co., 260 F.2d 461, 464-65 (8th Cir. 1958) (same); Stoll v. Hawkeye Cas. Co., 185 F.2d 96, 99 (8th Cir. 1951) (same).

In a number of ways, garnishment actions and supplementary proceedings under section 56.29(6) are similar. Both supplementary proceedings and garnishment actions seek to collect on unsatisfied judgments. Compare Fla. Stat. § 56.29(6)(b) (allowing judgment creditor to void transfer of assets by judgment debtor), with id. § 77.01 ("Every person . . . who . . . has recovered judgment in any court . . . has a right to a writ of garnishment . . . to subject any debt due to defendant by a third person . . . ."). Both supplementary proceedings and garnishment actions allow a judgment creditor to litigate against a third party by filing a motion after it receives a judgment. Compare B & I Contractors, Inc. v. Mel Re Constr. Mgmt., 66 So. 3d 1035, 1037-38 (Fla. 2d Dist. Ct. App. 2011) (noting that supplementary proceedings are initiated with an affidavit and a motion to implead the third party), with Fla. Stat. § 77.03 (explaining that writ of garnishment is issued upon motion by judgment creditor). And a judgment creditor may receive a judgment against a third party in both garnishment actions and supplementary proceedings. Compare Pollizzi, 52 So. 3d at 789 (upholding money judgment against third party in supplementary proceeding), with Fla. Stat. § 77.083

22

("Judgment against the garnishee . . . shall be entered for the amount of his or her liability as disclosed by the answer or trial."). The Estate offers no viable distinction between the garnishment actions in Webb and Butler and the first supplementary proceeding, and we too are hard pressed to find any principled distinction.

We are, therefore, fully satisfied that the first supplementary proceeding was a "civil action" under § 1441.

**B.**

The district court sua sponte remanded the case to Florida's circuit court anyway, applying the Colorado River abstention doctrine. The district court determined that four of six Colorado River factors favored abstention. GE argues, however, that the federal and state proceedings are not parallel, so Colorado River is wholly inapposite, and that, in any event, none of the six factors favored abstention. We agree with GE that the district court abused its discretion in abstaining, and, therefore, reverse the district court's remand order.

In Colorado River Water Conservation District v. United States, the Supreme Court held that a federal court could abstain from a case if (1) a parallel lawsuit was proceeding in state court, and (2) judicial-administration reasons so demanded abstention. 424 U.S. 800, 818-20 (1976). Since the general rule is that "the pendency of an action in the state court is no bar to proceedings concerning

the same matter" in federal court, and since the federal courts have a virtually unflagging obligation to exercise their jurisdiction, <u>Colorado River</u> abstention applies in exceptional circumstances. <u>Id.</u> at 817-18 (internal quotation marks omitted). "Only the clearest of justifications" merits abstention. <u>Id.</u> at 819. As the Supreme Court explained, and as this Court has repeatedly cautioned, abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." <u>Id.</u> at 813 (quoting <u>Cnty. of Allegheny v. Frank Mashuda Co.</u>, 360 U.S. 185, 188-89 (1959)); <u>Ambrosia Coal & Constr. Co. v. Pagés Morales</u>, 368 F.3d 1320, 1331 (11th Cir. 2004); <u>see also</u> <u>Met. Life v. Lockette</u>, 155 F.3d 1339, 1341 (11th Cir. 1998) ("Abstention from the exercise of federal jurisdiction is the exception, not the rule."). And while abstention as a general matter is rare, <u>Colorado River</u> abstention is particularly rare, "permissible in fewer circumstances than are the other abstention doctrines." <u>Ambrosia Coal</u>, 368 F.3d at 1331. Thus, we have cautioned that "dismissal of an action in deference to parallel state proceedings is an extraordinary step that should not be undertaken absent a danger of a serious waste of judicial resources." <u>Noonan S., Inc. v. Cnty. of Volusia</u>, 841 F.2d 380, 383 (11th Cir. 1988); <u>see also</u> <u>First Franklin Fin. Corp. v. McCollum</u>, 144 F.3d 1362, 1364 (11th Cir. 1998) (per curiam) ("[D]ismissal is warranted in light of a concurrent state court action only when a

24

balancing of relevant factors, heavily weighted in favor of the exercise of jurisdiction, shows the case to be exceptional." (internal quotation marks omitted)).

"[A]s a threshold matter," a federal court may abstain under the Colorado River doctrine only if there is a parallel state action, which is one involving "substantially the same parties and substantially the same issues." Ambrosia Coal, 368 F.3d at 1330. GE contends this prerequisite for the application of Colorado River abstention has not been met, because the first and second supplementary proceedings were brought against wholly different sets of defendants and involve issues unique to each defendant and each allegedly fraudulent transfer. The Estate counters that an exact identity of parties is not required, see id. at 1329-30, and that the allegations in both proceedings relate to one massive conspiracy to strip the assets of the Trans Health defendants in an effort to delay, hinder, or defraud the Estate in collecting the $110 million judgment in the underlying tort suit. While GE has presented a substantial claim that the first and second supplementary proceedings are not sufficiently parallel because the parties are different and the claims raise distinct legal and factual issues, we need not answer this question, because even if we assume the proceedings are substantially similar, the district court still abused its discretion in abstaining under Colorado River. Cf. id. at 1330-31 (acknowledging the "problematic" question of whether the state and federal proceedings presented substantially the same issues, but nonetheless "assum[ing]

25

for purposes of [its] Colorado River discussion that the cases are sufficiently similar to render the question of whether the district court should have abstained a genuine issue").

Where there are parallel federal and state proceedings, abstention under the Colorado River doctrine is still only warranted in exceptional circumstances. Federal courts must consider six factors in determining whether Colorado River abstention is appropriate:

> (1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties.

TranSouth Fin., 149 F.3d at 1294-95. No single factor is dispositive, and we are required to weigh the factors with a heavy bias favoring the federal courts' obligation to exercise the jurisdiction that Congress has given them. See Lockette, 155 F.3d at 1341; Am. Bankers Ins. Co. of Fla. v. First State Ins. Co., 891 F.2d 882, 884-85 (11th Cir. 1990). Finally, we apply these factors flexibly and pragmatically, not mechanically. Ambrosia Coal, 368 F.3d at 1332.

The first Colorado River factor asks if one court assumed jurisdiction over property before the other court. See Am. Bankers Ins., 891 F.2d at 884. In its order, the district court rightly concluded that neither the district court nor the state circuit

26

court had assumed jurisdiction over any property. **(Doc. 114 at 18)**. On appeal, the Estate maintains that the judgment in the underlying tort action constitutes "property" and that the state court had jurisdiction over this "property." The Estate's argument is unpersuasive because this factor applies only where there is a proceeding in rem. See Ambrosia Coal, 368 F.3d at 1332. Put differently, where "there is no real property at issue," this factor does not favor abstention. See Maharaj v. Sec'y Dep't of Corr., 432 F.3d 1292, 1306 (11th Cir. 2005) (emphasis added). It is undeniable that this is not an in rem proceeding, and a "judgment," which is a "court's final determination of the rights and obligations of the parties in a case," is not real property. Black's Law Dictionary 918 (9th ed. 2009). Thus, this factor cannot favor abstention.

The second factor concerns the inconvenience of the federal forum and focuses "primarily on the physical proximity of the federal forum to the evidence and witnesses." Ambrosia Coal, 368 F.3d at 1332. The district court concluded that the federal forum was just as convenient as the state forum, both the Estate and GE agree, and so do we. The federal forum neighbors Polk County, Florida, where the state forum is located. Hence, the federal forum and the state forum are equally convenient; this factor thus cuts against abstention. See Niagra Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 101 (2d Cir.

2012); Stewart v. W. Heritage Ins. Co., 438 F.3d 488, 492 (5th Cir. 2006);

PaineWebber, Inc. v. Cohen, 276 F.3d 197, 207 (6th Cir. 2001).

Under the third factor, we ask which forum acquired jurisdiction first. What matters is not so much the "chronological order in which the parties initiated the concurrent proceedings, but the progress of the proceedings and whether the party availing itself of the federal forum should have acted earlier." TranSouth Fin., 149 F.3d at 1295. "This factor, as with the other Colorado River factors, is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 21 (1983).

The district court concluded that this factor favored abstention, because both supplementary proceedings were at equal stages of litigation.  Even if this were so, however, that would not favor abstention. See Noonan S., 841 F.2d at 382 (holding that "this factor does not counsel in favor of dismissal" where the "state court action is no further along than" the federal case). But in fact, at the time the district court entered its order, the first supplementary proceeding was further along than the second supplementary proceeding. Discovery had progressed in the first supplementary proceeding: five witnesses had been deposed, an expert report exchanged, and a request for production served.  In contrast, the second supplementary proceeding had barely progressed. The parties to the second

28

supplementary proceeding filed a case-management report forty-six days before the second supplementary proceeding was remanded. According to the case-management report, the parties had not, at the time, even made their initial discovery disclosures under Federal Rule of Civil Procedure 26(a). Applied pragmatically, then, the third factor tipped against abstention too. See First Franklin Fin. Corp., 144 F.3d at 1364-65 ("The [third] factor, the order in which the tribunals obtained and exercised jurisdiction, also weighs against discretionary dismissal. . . . [N]o activity had occurred in state court before the filing of the federal petition or even before the district court ruled.").

The fourth Colorado River factor monitors the potential for piecemeal litigation. Run of the mill piecemeal litigation will not do: this factor "does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is abnormally excessive or deleterious." Ambrosia Coal, 368 F.3d at 1333. And this factor does not favor abstention when litigation is "inevitably piecemeal." Am. Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc., 743 F.2d 1519, 1525 (11th Cir. 1984). Although the district court concluded that this factor heavily favored abstention, the litigation here will be inevitably piecemeal. According to the district court, the first supplementary proceeding was continuing in federal court while the second supplementary proceeding pushed forward in the Tenth Judicial Circuit, creating piecemeal litigation. The district

29

court determined that it could resolve the piecemeal litigation through a remand.

But this is not so. As the Estate explicitly concedes on appeal, it has chosen to

litigate the supplementary proceedings separately anyway: "the Estate has chosen

to separate out the evidentiary hearings against the sixteen impled parties" -- the

two in this action and the fourteen in the second supplementary proceeding -- and

to offer separate "law, evidence, and testimony" at each hearing. This is

unsurprising, because the separate hearings will involve distinct issues of law and

fact specific to the alleged fraudulent conduct of each party. Thus, among other

things, the proofs will differ concerning the nature and circumstances surrounding

the transfer of distinct assets at distinct times; and the method of proof surrounding

the mens rea of the sixteen named defendants will surely differ as well. As a

practical matter, then, this litigation is "inevitably piecemeal," so this factor too

does not favor abstention. See Am. Mfrs., 743 F.2d at 1525.

The fifth factor requires us to determine whether federal law or state law

provides the rule of decision. TranSouth Fin., 149 F.3d at 1295. The district court

concluded that state law applied and that the fifth factor therefore favored

abstention. But this factor favors abstention only where the applicable state law is

particularly complex or best left for state courts to resolve. See, e.g., Am. Bankers,

891 F.2d at 886 ("There is no federal issue in this case, but this does not counsel in

favor of dismissal. . . . This action does not . . . involve complex questions of state

30

law that would best be resolved by a state court."); <u>Noonan S.</u>, 841 F.2d at 382 (giving little weight to this factor where state law was not complex). Nothing suggests that Florida's UFTA is the kind of complex law that raises thorny and difficult state law questions; federal courts are regularly called upon to resolve state law claims of fraud, including claims arising under Florida's UFTA. <u>See, e.g.,</u> <u>Gen. Trading Inc. v. Yale Materials Handling Corp.</u>, 119 F.3d 1485, 1497-1501 (11th Cir. 1997); <u>In re Ormond Beach Assocs.</u>, 184 F.3d 143, 156 (2d Cir. 1999).[8]

The sixth and final factor concerns whether the state court can adequately protect the parties' rights. The district court found that the state court could protect GE's, Schron's, and the Estate's rights and determined that this factor favored abstention. We agree with the general observation about the adequacy of the state forum, but "[t]he fact that <u>both</u> forums are adequate to protect the parties' rights merely renders this factor neutral." <u>Noonan S.</u>, 841 F.2d at 383 (emphasis added); <u>accord</u> <u>Ambrosia Coal</u>, 368 F.3d at 1334 ("This factor will only weigh in favor or against abstention when one of the fora is inadequate to protect a party's rights."). Indeed, the Estate itself concedes that "the final factor is neutral." In short, none of

---

[8] GE also contends that this factor is inapplicable because the Estate, in a "Supplement" and accompanying expert reports filed in the district court, asserts that GE participated in, failed to disclose, and actively concealed a variety of federal offenses, including "wire fraud, bank fraud, tax fraud and Medicaid fraud." While we need not wade far into the issue, there are federal questions that appear to be bound up in the state law fraud claims. But in all events, even if we limit our inquiry to the state law fraud claims alleged in the Estate's initial pleadings, those claims are not of the kind or character that would tip the scales in favor of <u>Colorado River</u> abstention.

the six <u>Colorado River</u> factors compel abstention. If anything, most tip in the opposite direction. In the face of the district court's duty to exercise the jurisdiction Congress has given, under the circumstances of this case we conclude that the district court abused its discretion in abstaining under <u>Colorado River</u>.

## III.

In sum, this is a "civil action" under 28 U.S.C. § 1441 and was properly removable to federal district court. However, the district court abused its discretion when it remanded the case to state court absent the rare and exceptional circumstances found in <u>Colorado River</u>. The district court is obliged to exercise its jurisdiction over this case, and therefore we reverse the district court's remand order and send the case back to the district court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**